J-S49030-20

2022 PA Super 46

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SCOTT ALLEN SCHROAT | : | |
| | : | |
| Appellant | : | No. 1848 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 23, 2019
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001371-1992

BEFORE: OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY DUBOW, J.: **FILED: March 15, 2022**

Appellant, Scott Allen Schroat, appeals from the Judgment of Sentence entered on October 23, 2019, resentencing him to life in prison without parole ("LWOP") for a First-Degree Murder he committed as a juvenile. Relying on ***Miller v. Alabama***, 567 U.S. 460 (2012) and ***Montgomery v. Louisiana***, 577 U.S. 190 (2016), he challenges the legality of his LWOP sentence and the discretionary aspects of his sentence. After careful review, we conclude that the resentencing court abused its discretion in sentencing Appellant to LWOP. We, thus, vacate Appellant's Judgment of Sentence and remand for resentencing.

In November 1992, Appellant pleaded guilty to First-Degree Murder, Possessing an Instrument of Crime, Unlawful Restraint, and Abuse of a Corpse after strangling and stabbing a five-year-old girl in his parents' house and

_____

[*] Former Justice specially assigned to the Superior Court.

disposing of the body. Appellant was seventeen years old at the time of the murder. In December 1992, the trial court imposed a mandatory sentence of LWOP, plus six to twelve years. This Court affirmed the Judgment of Sentence, after which the Supreme Court of Pennsylvania denied allowance of appeal. *See Commonwealth v. Schroat*, 639 A.2d 842 (Pa. Super. 1993) (unpublished memorandum), *appeal denied*, 646 A.2d 1177 (Pa. 1994).

On February 26, 2016, Appellant filed a petition pursuant to the Post Conviction Relief Act[1] seeking resentencing under **Miller** and **Montgomery**. The court granted Appellant relief and, on August 1, 2019, conducted a resentencing hearing. Prior to the hearing, the Commonwealth gave notice of its intent to seek LWOP.

On October 23, 2019, following Appellant's resentencing hearing, the court issued an opinion in which it re-imposed Appellant's LWOP sentence.

Appellant filed a post-sentence motion, which the court denied on November 20, 2019. Appellant then timely filed the instant appeal and both he and the court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises challenges to the legality of his LWOP sentence and the discretionary aspects of sentencing. Appellant's Br. at 4.

### Legality of Sentence

In his first set of issues, Appellant challenges the legality of his LWOP sentence. Appellant's Br. at 17-37. He argues that the resentencing court

---

[1] 42 Pa.C.S. §§ 9541-46.

lacked competent evidence to find him permanently incorrigible and, as a result, his LWOP sentence is illegal. *Id.* He takes issue with the adequacy of the court's consideration of his age, diminished culpability, immaturity, and childhood trauma. *Id.* He likewise criticizes the adequacy of the court's consideration of evidence that he has matured and experienced rehabilitation while incarcerated. *Id.*

Recently, in ***Commonwealth v. Felder***, --- A.3d ----, 2022 WL 529338 (Pa. 2022), our Supreme Court acknowledged that the U.S. Supreme Court has concluded that "a separate factual finding of permanent incorrigibility is not required before a sentencer imposes a life-without-parole sentence" on a juvenile offender convicted of first-degree murder. *Id.* at *8 (quoting ***Jones v. Mississippi***, 141 S.Ct. 1307, 1318-19 (2021)). Thus, when reviewing the legality of a sentencing court's imposition of LWOP on a juvenile offender, we focus on whether the statutory sentencing scheme provides the sentencing court with the "discretion to consider the mitigating qualities of youth and impose a lesser punishment." ***Felder***, 2022 WL 529338 at *8 (citing ***Jones***, 141 S.Ct. at 1314). Appellate review of the adequacy of a resentencing court's consideration of factors attendant to the defendant's youth, such as age, culpability, immaturity, childhood trauma, and whether the defendant is permanently incorrigible, involves the review of the discretionary aspects of

sentence.[2] ***Commonwealth v. DeJesus***, 266 A.3d 49, 54 (Pa. Super. 2021) (*en banc*).

Appellant does not allege that the court lacked the discretion to consider his youth and its attendant characteristics. Rather, he assails the court's balancing of those factors and its conclusion that he is permanently incorrigible. Pursuant to ***Felder*** and ***DeJesus***, the sentencing court's consideration of the factors of youth goes to its sentencing discretion and not to the legality of the sentence. As a result, Appellant's legality claim fails.

### Discretionary Aspects of Sentence

Appellant also challenges the discretionary aspects of his sentence. Appellant's Br. at 13-16, 37-39. We do not review an appellant's challenge to discretionary aspects of a sentence as a matter of right. ***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015). Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a post-sentence motion; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of a sentence; and (4) presenting a substantial question

---

[2] We note that when sentencing juveniles convicted of first- or second-degree murder after June 24, 2012, the court is required to consider several specifically enumerated sentencing factors, including seven "age-related characteristics[.]" 18 Pa.C.S. § 1102.1(d). Since Appellant committed first-degree murder before June 24, 2012, the court considers these factors as "guidance" which is "non-binding[.]" ***Felder***, 2022 WL 529338 at *9 n.15.

that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms. ***Id.***

Appellant timely appealed, preserved the issue in a post-sentence motion, and included a Rule 2119(f) Statement in his brief. We, thus, proceed to consider whether Appellant has raised a substantial question for our review.

We determine on a case-by-case basis whether an appellant has raised a substantial question regarding discretionary sentencing. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** (citation and quotation marks omitted).

In his Rule 2119(f) Statement, Appellant avers that the sentencing court abused its discretion by sentencing him to an excessive LWOP sentence, placing inordinate focus on the facts of the underlying offense, failing to consider relevant mitigating factors, and failing to consider evidence of his rehabilitation while in prison. Appellant's Br. at 13-16. These claims raise substantial questions for our review.[3] ***Commonwealth v. Lamonda***, 52 A.3d

---

[3] Although Appellant's Rule 2119(f) Statement is not a model of clarity, he has cited pertinent legal authority that can be read to support his assertion that his sentence was not appropriate under our Sentencing Code. ***See*** Appellant's Br. at 13-15. Additionally, the Commonwealth has not objected to the adequacy of Appellant's Rule 2119(f) statement. Therefore, we decline to find waiver based on these technical defects. ***See Commonwealth v. Dodge***, 77 A.3d 1263, 1271 (Pa. Super. 2013).

365, 371 (Pa. Super. 2012) (recognizing substantial question where sentencing court focused on gravity of offense); *Commonwealth v. White*, 193 A.3d 977, 983 (Pa. Super. 2018) (recognizing substantial question where appellant claims sentencing court disregarded the defendant's rehabilitation needs); *Commonwealth v. Lekka*, 210 A.3d 343, 351-52 (Pa. Super. 2019) (recognizing substantial question where appellant averred that sentencing court failed to recognize "the extensive evidence that [appellant] presented of his rehabilitation during his years in prison.").

We consider the merits of Appellant's claims mindful that sentencing is vested in the sound discretion of the sentencing court, and we shall not disturb a sentence absent a manifest abuse of discretion.[4] *Commonwealth v. Summers*, 245 A.3d 686, 692-93 (Pa. Super. 2021).

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Id.* (citation omitted).

---

[4] We are mindful that 42 Pa.C.S. § 9781(c) directly ties this Court's ability to vacate a sentence to the sentencing court's adherence to the Sentencing Guidelines. However, as our Supreme Court recognized in *Commonwealth v. Batts*, 163 A.3d 410, 458 (Pa. 2017) *abrogated on other grounds by Felder*, *supra*, "the Sentencing Guidelines adopted by the Pennsylvania Commission on Sentencing do not include a guideline sentence for an individual convicted of first-degree murder prior to *Miller*."

Sentencing in Pennsylvania is individualized and requires the trial court to fashion a sentence that is consistent with, *inter alia*, "the rehabilitative needs of the defendant[.]" **Commonwealth v. Baker**, 72 A.3d 652, 663 (Pa. Super. 2013) (quoting 42 Pa.C.S. § 9721(b)). Additionally, when sentencing to total confinement, the court must consider "the history, character, and condition of the defendant[.]" 42 Pa.C.S. § 9725.

Finally, we review sentences with "regard for: (1) the nature and circumstances of the offense and the history and characteristics of the defendant[;] (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation[;] (3) the findings upon which the sentence was based[;] and (4) the guidelines promulgated by the commission." 42 Pa.C.S. § 9781(d).

In the instant case, at his resentencing hearing, Appellant presented the testimony of psychiatry expert Dr. Terri Calvert. Dr. Calvert reviewed Appellant's records, met with him on multiple occasions, and administered to him personality testing. Dr. Calvert Psychiatric Evaluation Report, 7/15/19, at 1 ("Psychiatric Evaluation"). Dr. Calvert concluded that Appellant has matured in prison despite his lack of mental health treatment, is not currently suffering any mental health disorders, and poses a low risk to reoffend if paroled. N.T. Resentencing Hearing, 8/1/19, at 69-75, 81-90. Dr. Calvert credited brain development and maturity as the reason for Appellant's change. **Id.** at 81-87; Psychiatric Evaluation at 7.

Dr. Calvert explained that Appellant was "very immature" in 1992, due largely to his "dysfunctional [and] unhealthy" home life which delayed or slowed his brain development. N.T. Resentencing at 69. Appellant's life before incarceration was "marked by neglect and abuse[.]" Psychiatric Evaluation at 5; N.T. Resentencing at 69. Appellant "[suffered abuse] at the hands of his biological parents, placement in multiple [foster] care homes, and subsequent adoption into a family that was also abusive." Psychiatric Evaluation at 5-6. Appellant also reported that his adoptive father sexually abused him beginning when Appellant was 9 or 10 years old. N.T. Resentencing at 60. Appellant "struggled with emotional regulation and exhibited acting out behaviors and self-mutilation as a means of coping with the chaotic family environment." Psychiatric Evaluation at 6.

By contrast, "the austere environment of prison has been a healthier environment for him in the last 25+ years than was the abusive and neglectful environment in which he lived prior to his arrest." *Id.* at 7. "[I]n a healthier environment, it's more likely than not for people to improve, to change their behaviors, to be able to think things through to manage their emotions." N.T. Resentencing at 75. Dr. Calvert explained that Appellant's "above-average work performance ratings and average housing performance ratings" in prison are evidence that Appellant "is functioning adequately with peers, correctional officers[,] and work supervisors." Psychiatric Evaluation at 6.

Appellant has incurred only four "minor" misconducts during his 26 years in prison. Psychiatric Evaluation at 6. Dr. Calvert explained that the

number of misconducts is not concerning because "[i]t's just not difficult at all to get in trouble in prison." N.T. Resentencing at 88. Rather, Dr. Calvert found heartening that Appellant has "no history of aggression or violence during his [Department of Corrections] stay." Psychiatric Evaluation at 6.

Finally, Dr. Calvert administered the Minnesota Multiphasic Personality Inventory ("MMPI") to Appellant. N.T. Resentencing at 78-81. The MMPI is an objective test used to measure personality style. *Id.* at 78. The results showed no evidence of any "current emotional or psychological conditions or problems." *Id.* at 79. This conclusion comports with the prison Department of Psychology records, which "indicate no significant difficulties in functioning or any significant psychiatric symptoms[.]" Psychiatric Evaluation at 6.

Dr. Calvert concluded that Appellant is at low risk to re-offend if paroled. N.T. Resentencing at 87-90. "Given all of the information available to me, it is my opinion that [Appellant] is very likely to transition successfully to the community without reoffending or exhibiting aggressive or violent behavior . . . [T]he combination of personality testing results as well as his behavior over the last 20 years predicts that the risk of violence is low." Psychiatric Evaluation at 7.

The Commonwealth did not present any expert testimony at Appellant's Resentencing Hearing to contradict Dr. Calvert's opinions, nor did it introduce

evidence proving that Appellant suffers any mental health disorders.[5] Notwithstanding the absence of contradictory evidence, however, the sentencing court "[did] not agree with Dr. Calvert's conclusion that [Appellant] is no longer mentally ill because he has matured and 'flourished' in the structured environment of prison." Trial Ct. Op. at 14. It reasoned that "the deep seated and dangerous mental health problems that drove [Appellant] to brutally kill a five-year-old child with his bare hands and repeatedly ignore her pleas for help did not disappear just because he 'matured' in prison and his teenaged brain developed." *Id.*

The court likewise disagreed with Dr. Calvert's opinion that Appellant poses a low risk to reoffend. *Id.* at 15. The court again reasoned that "[t]he internal demons that caused [Appellant] to stab and strangle [Victim] did not permanently disappear because of 'maturity,' brain development, and prison." *Id.* at 15-16.

Finally, the court found that "[c]ontrary to [Appellant's] expert, the [c]ourt concludes that the type of sickness that drove [Appellant] to kill [Victim] did not just disappear with 'maturity,' or brain development, or prison." *Id.* at 18.

Considering the above, we conclude that the trial court abused its discretion by sentencing Appellant to LWOP. To discredit evidence that

_____

[5] The Commonwealth introduced into evidence transcripts from Appellant's December 1, 1992 Competency Hearing and June 8, 1992 Preliminary Hearing, Appellant's Presentence Investigation Report, the Commonwealth's Sentencing Memorandum, and victim impact testimony.

Appellant has experienced growth and maturity while incarcerated, the court referred consistently to the nature of Appellant's crimes. After giving a four-page, detailed recitation of the facts of the murder, the court referred an additional ten times to the facts of Appellant's crimes, characterizing the murder as "heinous," "horrific," "senseless," and "brutal." It did so in analyzing Appellant's capacity for change, extent of participation in the crime, mental health history, potential for rehabilitation, threat to public safety, and degree of criminal sophistication. *Id.* at 8, 9, 14, 15, 18, 20-21.

By contrast, the court gave short shrift to factors indicative of Appellant's history, character, condition, and rehabilitative needs, statutory factors it is required to consider. *See* 42 Pa.C.S. §§ 9721(b), 9725. *See also Commonwealth v. Coulverson*, 34 A.3d 135, 145 (Pa. Super. 2011) ("the record as a whole must reflect due consideration by the court of the statutory considerations [enunciated in Section 9721(b)]." (citation omitted)). For example, the court summarily found that Appellant had "no diminished culpability" despite being a minor when he committed the crimes. Trial Ct. Op. at 8. It effectively dismissed Dr. Calvert's testimony about Appellant's childhood trauma by summarily acknowledging that he "did not have an ideal home environment." *Id.* at 9. It likewise dismissed Dr. Calvert's opinion that Appellant lacked maturity when he committed the murder without any significant discussion or analysis. *Id.* at 10.

In total, the court's opinion reflects a lack of consideration for Appellant's youth, history, and rehabilitative needs in favor of an inordinate

focus on the heinous act he committed as a minor. Appellant presented significant, uncontroverted evidence that he has matured and made steps toward rehabilitation while in prison. Yet, in the sentencing court's view, Appellant has made no progress because he committed murder in 1992. This view directly contradicts the Supreme Court's edict that "children who commit even heinous crimes are capable of change[,]" **Montgomery**, 577 U.S. at 212, is manifestly unreasonable, and an abuse of discretion.

We, thus, vacate Appellant's sentence and remand for resentencing.

Judgment of Sentence vacated. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/15/2022