J-A21026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ADONIS ABREU MARTINEZ | : | |
| | : | |
| Appellant | : | No. 2988 EDA 2022 |

Appeal from the Judgment of Sentence Entered August 29, 2022
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s):  CP-39-CR-0002122-2021

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 16, 2024**

Appellant Adonis Abreu Martinez appeals from the judgment of sentence entered by the Lehigh County Court of Common Pleas on August 29, 2022 for Indecent Assault - Person Less than 13 Years of Age and Corruption of Minors.[1] Appellant challenges the constitutionality of Revised Subchapter H of the Sexual Offender Registration and Notification Act ("SORNA"),[2] the trial court's classification of Appellant as a Sexually Violent Predator ("SVP"), and the discretionary aspects of his sentence.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On March 22, 2022, at a guilty plea hearing, the Commonwealth alleged that Appellant assaulted his live-in paramour's 11-year-old daughter ("Victim") on May 28,

---

[1] 18 Pa.C.S. §§ 3126(a)(7) and 6301(a)(1)(ii), respectively.

[2] 42 Pa.C.S. §§ 9799.10-9799.42.

2021. N.T. Guilty Plea, 3/22/22, at 10. The Commonwealth included in its recitation of facts that Victim alleged that Appellant "assaulted her a total of seven times in the home." *Id.*

Appellant's counsel disputed the allegations of prior conduct but acknowledged multiple incidents on May 28, 2021. *Id.* at 11. Upon clarifying questioning from the trial court, Appellant admitted to touching "the pubic hair on top of the vagina" and the "breast areas" of Victim on May 28, 2021. *Id.* at 12. Following this exchange, the court accepted Appellant's open guilty plea to one count each of Indecent Assault and Corruption of Minors, and the Commonwealth agreed not to pursue a charge of Aggravated Indecent Assault. *Id.* at 4, 12. The court ordered a presentence investigation report ("PSI") and an assessment by the Sexual Offenders Assessment Board ("SOAB") to determine whether Appellant met the criteria of an SVP.

On August 29, 2022, the court held an SVP and sentencing hearing. Initially, the court addressed Appellant's challenge to the constitutionality of SORNA. Appellant relied upon the Chester County Court of Common Pleas' decision holding Revised Subchapter H unconstitutional, following remand by the Supreme Court in **Commonwealth v. Torsilieri**, 232 A.3d 567 (Pa. 2020).[3] Unlike in **Torsilieri**, Appellant did not introduce any expert testimony

---

[3] The Commonwealth has appealed the decision in **Commonwealth v. Torsilieri**, No. CR-1570-2016 (Chester County C.C.P. Aug. 22, 2022), to the Supreme Court, where the case is currently pending following argument in May 2023 at docket number 97 MAP 2022.

to support his claims of unconstitutionality. Noting that the Chester County decision was not binding, the trial court denied Appellant's SORNA challenge.

The court proceeded to the SVP hearing where the SOAB expert testified that Appellant met the criteria for an SVP because he had a "mental abnormality" of Pedophilic Disorder and engaged in "predatory behavior." N.T. Sentencing, 8/29/22, at 12, 19-20. Appellant's counsel objected to the expert's evaluation, asserting that it was improperly based upon allegations in "Children and Youth Records," and the PSI to which he had not pled guilty, including allegations of assault spanning ten months and a threat to kill Victim's mother if Victim told others about the abuse. *Id.* at 13-14, 21, 23-24. Counsel also challenged the expert's consideration of prior criminal complaints in 2008 and 2010, which did not result in convictions, and in 2019, which resulted in a guilty plea to a summary offense, none of which related to Victim. *Id.* The trial court overruled Appellant's objections and classified Appellant as an SVP, concluding that the Commonwealth presented the requisite clear and convincing evidence. *Id.* at 15, 32-33.

The same day, the court held a sentencing hearing at which Victim testified that she suffered from post-traumatic stress disorder, depression, and anxiety as a result of the abuse. *Id.* at 37. Appellant's sister-in-law testified in support of Appellant, and Appellant stated his remorse. *Id.* at 40-46. Prior to imposing the sentence, the court indicated that it had reviewed the PSI, letters submitted in support of Appellant, and the testimony presented. *Id.* at 51-52.

The court set forth the relevant sentencing guidelines given Appellant's prior record score prior to imposing an aggregate sentence of 4 to 9 years' incarceration. For Indecent Assault, the court sentenced Appellant to 2 to 5 years of incarceration plus 3 years of probation. For Corruption of Minors, the court imposed a consecutive sentence of 2 to 4 years of incarceration. In imposing the sentences, the court emphasized, *inter alia*, the significant impact the crimes had on the Victim, Appellant's violation of his role as a father figure, and the seriousness of the offense. While the court did not consider Appellant's 2008 and 2010 arrests, it found his 2019 convictions for disorderly conduct and harassment relevant as they involved "assaultive, aggressive behavior" and the "victimization of another female." **Id.** at 53.

On September 7, 2022, Appellant filed a post-sentence motion raising the same issues he presents on appeal. On November 2, 2022, the trial court denied the post-sentence motion, setting forth its reasoning in an extensive footnote.[4]

On November 30, 2022, Appellant filed his Notice of Appeal. After Appellant timely complied with Pa.R.A.P. 1925(b), the trial court issued its Pa.R.A.P. 1925(a) opinion on December 28, 2022, which incorporated the reasoning in its November 2, 2022 order.

---

[4] As the footnote spans five pages, when citing the court's analysis, we reference the page of the order on which the relevant language appears.

Appellant raises eleven questions for our review, challenging the constitutionality of SORNA, his SVP designation, and the discretionary aspects of his sentence.

**A. SORNA challenges**

Appellant raises the following questions challenging SORNA for our review:

1. Whether that portion of the sentence imposing SORNA registration requirements should be vacated because SORNA (Revised Subchapter H) violates both the Pennsylvania and federal constitution in the following ways:

A. Whether SORNA (Revised Subchapter H) denies the Appellant due process under the Pennsylvania Constitution because it creates an irrebuttable presumption that those convicted of enumerated offenses "pose a high risk of committing additional sexual offenses" depriving those individuals of their fundamental right to reputation without notice and an opportunity to be heard?

B. Whether SORNA (Revised Subchapter H) denies the Appellant procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution because it unlawfully restricts liberty and privacy without notice and an opportunity to be heard?

C. Whether SORNA (Revised Subchapter H) violates substantive due process under the state and federal constitutions, U.S. Const. Amend. XIV; Pa. Const. Art I, § 1, because SORNA deprives individuals of inalienable rights and fails to satisfy strict scrutiny?

D. Whether the recent amendment to SORNA, Revised Subchapter H, is in all material respects identical to SORNA and therefore a punitive law?

E. Does SORNA (Revised Subchapter H), as a penal law, violate the separation of powers doctrine because it usurps the exclusive judicial function of imposing a sentence?

F. Whether SORNA (Revised Subchapter H) contravenes the 5th, 6th and 14th Amendments of the United States Constitution and the corresponding protections of the Pennsylvania Constitution because as a criminal punishment, SORNA cannot be imposed without due process, notice and opportunity to contest its imposition, and ensuring that each fact necessary to support the mandatory sentence and a sentence beyond the authorized statutory maximum is submitted to a jury and proven beyond a reasonable doubt pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 1570 U.S. 99 (2013)?

G. Whether the imposition of lifetime sex offender registration for all Tier I offenses under SORNA, Revised Subchapter H. is a cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution?

H. Whether Appellant's sentence of lifetime registration pursuant to SORNA, Revised Subchapter H, is illegal as it is not a sentencing alternative authori[z]ed by Section 9721 of the Judicial Code and the trial court therefore lacked authority to impose such a sentence?

I. [Whether] Appellant's sentence of lifetime registration pursuant to SORNA is illegal as the statutory maximum for a felon[y] of the third degree as codified at Section 1103(3) of the [Crimes] Code is seven (7) years[?]

Appellant's Br. at 6-7 (unnecessary capitalization removed).

These questions are not only similar to those raised in *Torsilieri*, but they are also nearly verbatim to those presented in *Commonwealth v. Villanueva-Pabon*, 304 A.3d 1210, 1213-14 (Pa. Super. 2023).[5]

In *Villanueva-Pabon*, this Court observed that the Supreme Court "in *Torsilieri* ma[de] clear the importance of the scientific evidence as it

_____

[5] The only substantive differences are the tier referenced in Issue G and the statutory maximum in Issue I. We additionally observe that, like the present case, we issued *Villanueva-Pabon* after the Supreme Court heard argument in *Torsilieri*. *Villanueva-Pabon*, 304 A.3d at 1216 n.11.

pertained to each of the constitutional issues raised[.]"[6]  *Id.* at 1217. Villanueva-Pabon, however, "produced no scientific evidence whatsoever to support his claims that underlying legislative policy infringes on appellant's rights[.]" *Id.* at 1218.  This Court, therefore, concluded that Villanueva-Pabon failed to demonstrate that Revised Subchapter H "clearly, palpably, and plainly violated the constitution[.]" *Id.* (internal quotation marks removed).

The same reasoning applies in this case as Appellant did not seek to present any evidence to support his constitutional challenges.  Accordingly, we affirm the trial court's denial of Appellant's challenges to Revised Subchapter H.

### B. SVP Designation

Appellant next questions "[w]hether the trial court erred by designating the Appellant as a Sexually Violent Pred[a]tor?"  Appellant's Br. at 7. Appellant specifically challenges the SOAB expert's SVP recommendation to the extent it relies upon Victim's allegations rather than facts to which Appellant admitted guilt.  Appellant's Br. at 55-57.

A challenge to an SVP designation is a challenge to the sufficiency of the evidence for which "our standard of review is *de novo* and our scope of review

---

[6] In **Torsilieri**, the Supreme Court had remanded for an evidentiary hearing to determine whether a scientific "consensus has developed to call into question the [following] legislative policy decisions impacting offenders' constitutional rights[,]" specifically: "(1) that all sexual offenders pose a high risk of recidivation and (2) that the tier-based registration system of Revised Subchapter H protects the public from the alleged danger of recidivist sexual offenders."  232 A.3d at 584-85.

is plenary." **Commonwealth v. Meals**, 912 A.2d 213, 218 (Pa. 2006) (citation omitted). "[W]e view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied." **Commonwealth v. Hollingshead**, 111 A.3d 186, 189 (Pa. Super. 2015) (citation omitted).

Revised Subchapter H defines an SVP as an individual who, after December 20, 2012, committed specified crimes set forth in 42 Pa.C.S. § 9799.14, including Indecent Assault - Person Less than 13 Years of Age, 18 Pa.C.S. § 3126(a)(7), and Corruption of Minors, **id.** § 6301(a)(1)(ii), and "who is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12. The referenced Section 9799.24 establishes the SVP assessment process, which requires the SOAB expert to consider numerous factors and prepare a report. **Id.** § 9799.24(b), (d).

This Court recently addressed the issue raised by Appellant: whether the SOAB expert, when evaluating an offender to determine whether he is an SVP, may consider allegations to which the offender did not plead guilty. **Commonwealth v. Aumick**, 297 A.3d 770, 777 (Pa. Super. 2023) (*en banc*). In so doing, this Court observed that the SOAB expert is subject to Pennsylvania's general rules regarding expert witnesses, including Pa.R.E.

703, which provides that facts or data relied upon by an expert "need not be admissible" "[i]f experts in the particular field would reasonably rely on those kinds of facts or data[.]" **Aumick**, 297 A.3d at 777 (quoting Pa.R.E. 703). The Court additionally highlighted the statutory provisions requiring the SOAB expert to address specific factors and directing various government entities to provide the SOAB with records and information relevant to the SVP assessment. **Id.**; 42 Pa.C.S. § 9799.24(b), (c). Given these statutory provisions, the Court concluded "that the legislature intended that the SOAB [expert] consider more than the limited facts included in a plea colloquy" in making the SVP assessment and preparing the report for the court. **Aumick**, 297 A.3d at 782. According, the Court held that the SOAB expert in that case was "permitted to consider the affidavit of probable cause, criminal information, criminal complaint, preliminary hearing transcript, and the investigative reports prepared by Child Protective Services[.]" **Id.** at 781.

Following **Aumick**, Appellant's claim fails.[7] As the trial court held, the SOAB expert was not restricted to relying only on admitted facts but instead could consider "documents containing hearsay, such as the Lehigh County Children and Youth records." Trial Ct. Order at 4. Moreover, viewing the evidence in a light most favorable to the Commonwealth, we conclude that the trial court did not err in finding that the Commonwealth "proved by clear and convincing evidence that the [Appellant] met the criteria for [an SVP]"

---

[7] We observe that Appellant submitted his brief prior to our issuance of **Aumick**.

based upon the testimony and report of the SOAB expert, which supported the conclusion that Appellant suffered from Pedophilic Disorder which "predispose[d] him towards committing sexual crimes" and that his behavior "was predatory in nature[.]" *Id.* at 5. Accordingly, we affirm the court's classification of Appellant as an SVP.

## C. Discretionary Aspects of Sentence

Finally, Appellant presents the following question:

Did the trial court abuse its discretion in imposing an unreasonable sentence outside the sentencing guidelines when[ ]the trial court's reasons for its diversion from the guidelines do not support such a sentence beyond the aggravated range?

Appellant's Br. at 7.

Challenges to the discretionary aspects of a sentence are not appealable as of right. *Commonwealth v. Schroat*, 272 A.3d 523, 527 (Pa. Super. 2022) Rather, an appellant must satisfy the following four criteria to invoke our jurisdiction:

(1) fil[e] a timely notice of appeal; (2) properly preserv[e] the issue at sentencing or in a post-sentence motion; (3) comply[] with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of a sentence; and (4) present[] a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms.

*Schroat*, 272 A.3d at 527. Here, Appellant has satisfied the first three elements by filing a Notice of Appeal, preserving the issue in his Post-Sentence Motion, and including a separate Rule 2119(f) Statement in his Brief to this

Court. Thus, we consider whether Appellant has presented a substantial question for review.

"A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Summers*, 245 A.3d 686, 692 (Pa. Super. 2021) (citation omitted). We have found that a substantial question exists when an appellant asserts that "the sentencing court relied on an impermissible factor and ignored mitigating evidence when imposing an aggravated-range sentence[.]" *Commonwealth v. Mulkin*, 228 A.3d 913, 916 (Pa. Super. 2020); *see also Commonwealth v. Durazo*, 210 A.3d 316, 320 (Pa. Super. 2019) (finding substantial question based upon allegation that the court "exceeded the recommended range in the sentencing guidelines without providing an adequate basis").

We conclude that Appellant presents a substantial question because he claims that the court "did not provide adequate reasons" for imposing a sentence "outside the aggravated range" and instead improperly relied upon the "seriousness of the offense and victim impact without consideration of [his] mitigating factors." Appellant's Br. at 59.

When reviewing a challenge to the discretionary aspects of sentence, this Court will not disturb a sentence "absent a manifest abuse of discretion[,]" which requires not merely an error of judgment but, rather, "that the

sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Conte*, 198 A.3d 1169, 1176 (Pa. Super. 2018) (citation omitted).

Nevertheless, an appellate court "shall vacate" a sentence when "the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously" or when the court imposes a sentence that is "outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(1), (3). While not defined in the Sentencing Code, the concept of an unreasonable sentence "connotes a decision that is 'irrational' or 'not guided by sound judgment.'" *Commonwealth v. Velez*, 273 A.3d 6, 12 (Pa. Super. 2022) *appeal denied*, 283 A.3d 792 (Pa. 2022) (citation omitted).

In reviewing the discretionary aspects of a sentence, this Court should "consider the nature and circumstances of the crime; the history and characteristics of the defendant; the sentencing court's findings as well as the [sentencing] court's opportunity to observe the defendant, including through presentence investigation; and the sentencing guidelines." *Id.* at 9 (citing 42 Pa.C.S. § 9781(d)).

In turn, the sentencing court in imposing a sentence should consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant[,]" in addition to the sentencing guidelines. 42 Pa.C.S.

§ 9721(b). We reiterate, however, that the guidelines are "purely advisory" and "not mandatory." *Velez*, 273 A.3d at 10. A court may sentence outside the guidelines if it states it reasons on the record and "does not exceed the maximum sentence allowed by statute." *Id.* Where a presentence report exists, we "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa. Super. 2020) (citation omitted).

Appellant presents several claims that his sentence is unreasonable. First, Appellant asserts that the sentence should be vacated because the court intended to impose a sentence in the aggravated range, but instead imposed a sentence that "went well beyond the aggravated ranges" on each count.[8] Appellant's Br. 62-64. This claim is belied by the record as the court set forth the correct sentencing guidelines, including the aggravated range and the maximum sentence prior to imposing the sentence.[9] While the trial court

---

[8] Specifically, Appellant observes that the court imposed a minimum incarceration sentence for indecent assault that is "12 months beyond the aggravated range of sentence" and the minimum sentence imposed for Corruption of Minors is "6 months beyond the aggravated range sentence." Appellant's Br. at 10-11.

[9] During the sentencing hearing, the trial court stated the following sentencing guidelines, which the parties acknowledged as accurate. N.T. Sentencing, at 33-34. For Indecent Assault, the standard range was RS to 9 months' incarceration, with an aggravated range of 12 months, and a maximum sentence of 5 years, plus a mandatory 3 years of probation. *Id.* For Corruption of Minors, the standard range was 3 to 12 months' incarceration,
*(Footnote Continued Next Page)*

stated during sentencing that it was imposing sentences "in the aggravated range," it clarified that statement in its order denying Appellant's post-sentence motion and explaining its reasons for sentencing Appellant "beyond the aggravated range" on both counts. N.T. Sentencing, at 54-55; Trial Ct. Order at 4. As the court was aware of the accurate sentencing guidelines and expressed its reasons for exceeding them, we find this claim has no merit.

Appellant next argues that the sentence should be vacated as "unreasonable" pursuant to 42 Pa.C.S. § 9781(c)(3). Appellant's Br. at 65-71. He contends that the court's reasons for imposing sentences outside the standard range, specifically the impact of the crimes on Victim, the fact that Appellant served as a father-figure to Victim, and the multiple incidents of abuse in one day, do not support upward deviation from the guidelines. He argues that these factors are common in cases "of this type" and thus would have been considered in setting the guideline ranges. *Id.* at 65. Accordingly, he asserts, the court cannot rely on these factors to exceed the standard range.

Appellant also urges the court to find the sentence "unreasonable" based upon his "history and characteristics[.]". Appellant's Br.at 67-69 (quoting 42 Pa.C.S. § 9781(d)(1)). Appellant cites in support his remorse, his work history, and his "spotless" criminal record other than one summary

---

with an aggravated range of 18 months, and a maximum sentence of 7 years. *Id.* Thus, the total potential maximum sentence was 6 to 12 years of incarceration. Appellant's aggregate term of incarceration is 4 to 9 years.

harassment and disorderly conduct conviction. *Id.* at 68. He also emphasizes that the PSI recommended a sentence at the top of the standard range for each count, rather than above the aggravated range. *Id.* at 70. After careful review, we reject Appellant's claim that the sentences were unreasonable.

The trial court explained that, in imposing the sentence, it considered the factors set forth in Section 9721 and reviewed the PSI, which included information relating to Appellant's asserted mitigation factors, specifically his "employment history, his family support, and his minimal prior record." Trial Ct. Order at 3. While acknowledging Appellant's mitigating factors, the court reiterated its reasons for sentencing Appellant "beyond the aggravated range" for Indecent Assault:

> (1) the impact on [V]ictim in that she has been diagnosed with Post Traumatic Stress Disorder, she takes medication regularly, and she attends therapy twice a week; (2) the relationship of [Appellant] to [V]ictim in that he was the live-in boyfriend of [V]ictim's mother, thereby placing him in a "father figure" role; and (3) the seriousness of the offense in that it was comprised of a series of sexual events throughout the day.

*Id.* at 4. Similarly, in regard to the Corruption of Minors sentence, the court repeated the first reason and added its consideration of "the seriousness of the offense in that it entailed sexual touching of the genitalia by a 'father figure' who was three times [V]ictim's age." *Id.* The court also highlighted Appellant's "previous assaultive behavior towards his girlfriend" in 2019. *Id.*

We conclude that the sentencing court did not impose an unreasonable sentence. Rather, the court accurately stated the sentencing guidelines, considered the sentencing factors, acknowledged the mitigation factors

presented in the PSI and during the sentencing hearing, and articulated its reasons for deviating from the guidelines on the record.  Further, we reject Appellant's suggestion that these factors are so common to the crimes of Indecent Assault and Corruption of Minors that we should assume that they were taken into account by the drafters of the Sentencing Guidelines.  Given the sentencing court's developed reasons for imposing aggravated sentences with reference to the facts of this case and the impact on Victim, we conclude that the court did not abuse its discretion in sentencing Appellant.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/16/2024