J-A04032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL LEE BOURGEOIS | : | |
| | : | |
| Appellant | : | No. 626 MDA 2024 |

Appeal from the PCRA Order Entered April 8, 2024
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0004224-2001

BEFORE: LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED: JUNE 24, 2025**

Michael Lee Bourgeois ("Bourgeois") appeals from the order dismissing his first Post Conviction Relief Act ("PCRA")[1] petition filed following the vacation of his mandatory sentence of life without imprisonment, his resentencing to an aggregate term of eighty years to life imprisonment, and this Court's affirmance of that sentence on direct appeal. We affirm.

The PCRA court provided a comprehensive factual and procedural history of this case, which we adopt and set forth in relevant part as follows:

> . . . [I]n September [] 2001 , Bourgeois, along with his co-defendant Landon May [("May")], went to the residence of Bourgeois'[s] adoptive parents, Lucy and Terry Smith, with the intention of burglarizing their home. Upon entering the home, they were confronted by the Smiths and thereafter bound them with duct tape, shot them and stabbed them multiple times. The autopsy revealed that Lucy Smith was also sexually assaulted,

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

beaten on the left side of her head, and eventually smothered to death.

\* \* \* \*

As a result of the murders, the Commonwealth charged Bourgeois, then 17 years old, with two counts of homicide, criminal conspiracy, robbery, and burglary [in this case]. . . .

[I]n November [] 2001, the Commonwealth informed Bourgeois and the [c]ourt of its intention to seek the death penalty. . . .

The trial of Bourgeois'[s] co-defendant May began on November 1, 2002. The jury found May guilty on November 27, 2002, of two counts of burglary, two counts of conspiracy, one count of involuntary deviate sexual intercourse, and two counts of first-degree murder for the killings of Terry and Lucy Smith. After a penalty hearing, the jury returned two sentences of death against May, having specifically found the aggravating factor of torture.

At that point, Bourgeois chose to resolve his charges through a negotiated plea agreement with the Commonwealth. Accordingly, [i]n January [] 2003, Bourgeois entered into an "Agreement for Truthful Testimony" with the Commonwealth in which Bourgeois agreed "to cooperate fully and truthfully with the Commonwealth in the investigation and prosecution of the persons responsible for the deaths of Lucy and Terry Smith." In exchange for this cooperation and testimony, the Commonwealth agreed to present a plea agreement in which Bourgeois would plead guilty to the first-degree murders of Lucy and Terry Smith and receive consecutive sentences of life imprisonment without the possibility of parole. As a result, Bourgeois was spared the death penalty.

On January 27, 2003, Bourgeois tendered a negotiated plea to [the offenses at issue herein] . . .. After an extensive colloquy, the [trial court] accepted Bourgeois'[s] guilty plea. Bourgeois waived his right to a presentence investigation and was immediately sentenced to two consecutive terms of life in prison without the possibility of parole for the first-degree murder charges, with concurrent sentences of 10 to 20 years' imprisonment for each of the criminal conspiracy and burglary

- 2 -

charges. . . . No post sentence motions were filed[,] nor did Bourgeois file a direct appeal. Therefore, the judgment of sentence became final on February 26, 2003.

On July 16, 2007, Bourgeois filed his first *pro se* PCRA petition. . . .

* * * *

. . . Bourgeois' PCRA petition was dismissed on April 24, 2008, because the petition was not timely filed pursuant to 42 Pa.C.S.A. § 9545(b)[,] and because Bourgeois failed to plead and prove any of the exceptions set forth in section 9545(b)(1)(i-iii) to the timeliness requirement.

* * * *

[I]n August [] 2009, a three-judge panel of the Superior Court affirmed the denial of Bourgeois'[s] first PCRA petition as untimely in an unpublished memorandum opinion. No petition for allowance of appeal was filed with the Supreme Court of Pennsylvania.

[I]n July [] 2010, Bourgeois filed his second *pro se* PCRA petition challenging the imposition of a sentence greater than the lawful maximum, based upon the United States Supreme Court's decision in *Graham v. Florida*, 560 U.S. 48 (2010). Bourgeois'[s] first PCRA counsel, [Jeffrey A. Conrad, Esq. ("]Attorney Conrad[")], was appointed again to represent Bourgeois on his second PCRA. [I]n September [] 2010, PCRA counsel filed a motion to withdraw and "no merit" letter . . .. After giving the appropriate notice, Bourgeois'[s] second PCRA petition was denied . . . [i]n December [] 2010, and counsel was permitted to withdraw. No appeal followed.

[I]n August [] 2012, the Public Defender's Office filed a third PCRA petition on behalf of Bourgeois[,] raising a claim based on *Miller v. Alabama*, 567 U.S. 460 (2012), [in] which [the United States Supreme Court] held that the Eighth Amendment to the United States Constitution prohibits the imposition of a mandatory sentence of life imprisonment without the possibility of parole on a juvenile offender. However, the Supreme Court did not address the issue of whether its decision in *Miller* would apply retroactively to such cases on collateral review, and the Supreme

Court of Pennsylvania had granted allowance of appeal on the identical issue in **Commonwealth v. Cunningham**, 81 A.3d 1 (Pa. 2013). Accordingly, [the court] stayed any action on Bourgeois'[s] PCRA petition pending the Supreme Court of Pennsylvania's decision in **Cunningham**.

[I]n October [] 2013, the Supreme Court of Pennsylvania held that the ruling in **Miller** should not be applied retroactively to benefit individuals such as Bourgeois whose judgment of sentence became final prior to the decision in **Miller**. **See Cunningham**, 81 A.3d at 11. . . . [I]n July [] 2014, th[e c]ourt entered an [o]rder denying Bourgeois'[s] petition as untimely, pursuant to the ruling of the Supreme Court in **Cunningham** that the holding of **Miller** is not retroactively applicable to cases on collateral appeal. Bourgeois filed a timely [n]otice of [a]ppeal.

[I]n March [] 2015, a three-judge panel of the Superior Court affirmed the denial of Bourgeois'[s] third PCRA petition as untimely in an unpublished memorandum opinion. A petition for allowance of appeal was filed with the Supreme Court of Pennsylvania and granted [i]n February [] 2016. As a result of the holding by the Supreme Court of the United States in **Montgomery v. Louisiana**, 577 U.S. 190 (2016), that **Miller** must be applied retroactively by the States, the Supreme Court of Pennsylvania vacated the Superior Court of Pennsylvania's order, and the case was remanded for further proceedings consistent with **Montgomery**. **See Commonwealth v. Bourgeois**, 132 A.3d 983 (Pa. 2016).

On remand, the Superior Court reversed and vacated the denial of Bourgeois's petition as untimely[,] and remanded the case [to the trial court] for resentencing. . . .

\* \* \* \*

[I]n June [] 2017, the [Pennsylvania] Supreme Court issued a decision in **Commonwealth v. Batts**, 163 A.3d 410, 455 (Pa. 2017)[, *abrogated by* **Jones v. Mississippi**, 593 U.S. 98 (2021), *as recognized by* **Commonwealth v. Felder**, 269 A.3d 1232 (Pa. 2022)] (["]**Batts II**["]), requiring the Commonwealth to prove, beyond a reasonable doubt, that a juvenile offender is incapable of rehabilitation for a sentencing court to impose a sentence of life without the possibility of parole, and further requiring the Commonwealth to give reasonable notice to the juvenile offender

of its intention to seek a sentence of life without parole. Accordingly, [i]n June [] 2017, the Commonwealth gave Bourgeois notice of its intent to seek consecutive sentences of life without the possibility of parole for each count of murder in the first degree, and a resentencing hearing was scheduled for November [] 2017.

. . . The Commonwealth [later] indicated . . . that it was no longer seeking a sentence of life without parole for Bourgeois.

On November 3, 2017, th[e c]ourt imposed[, in relevant part,] consecutive sentences of 40 years[ of] incarceration to life for each of the two homicides. . . .

. . . Bourgeois filed a timely post-sentence motion to reconsider and modify the sentence. Bourgeois challenged his sentence as the functional equivalent of a life sentence without the possibility of parole, claiming th[e c]ourt "abused its discretion by effectively imposing life without parole in direct contravention to the reasoning of both **Miller** and **Montgomery**." Moreover, Bourgeois argued that th[e c]ourt "failed to fully appreciate (his) distinctive youthful attributes and model prisoner status, instead focusing its analysis on the facts and circumstances surrounding the crime itself and imposed, for all intents and purposes, a sentence of life without the (actual) possibility of parole." Bourgeois requested a sentence of 35 years to life imprisonment for each count of murder to be run concurrently, as well as concurrent with all other counts. The Commonwealth filed a timely answer to Bourgeois'[s] post-sentence motion . . ., asserting that the sentence was within the sound discretion of the court, and it was supported by the evidence. [I]n December [] 2017, Bourgeois' post-sentence motion was denied, and he filed a notice of appeal [i]n April [] 2018.

* * * *

[I]n April [] 2019, the Superior Court of Pennsylvania issued an opinion addressing the following three issues:

1. Did the trial court err in sentencing [Bourgeois] to an unconstitutional *de facto* life sentence without the necessary procedural protections, considerations and findings enumerated by the Pennsylvania Supreme Court in **Batts II**?

- 5 -

      2. Did the trial court err in failing to consider the ***Miller*** factors on the record prior to sentencing [Bourgeois] to *a de facto* life sentence?

      3. Did the trial court abuse its discretion in sentencing [Bourgeois] to a *de facto* life sentence by failing to properly apply ***Miller*** and ***Batts II***?

[] ***Commonwealth v. Bourgeois****,* 2019 WL 1579816 (Pa. Super. Apr. 12, 2019)[(unpublished memorandum)].

      In addressing these issues, the Superior Court referred to its decision in ***Commonwealth v. Bebout****,* 186 A.3d 462[, 466, 469-70] (Pa. Super. 2018), where it held that "a sentence of forty-five years to life imprisonment is not the [functional] equivalent of life without parole for a juvenile offender." ***Id****.* at [*5 (discussing ***Bebout***)].  It also discussed its decision in ***Commonwealth v. Foust****,* 180 A.3d 416 (Pa. Super 2018), where it held that individual sentences, rather than the aggregate sentence, must be considered when determining if the trial court imposed a term-of-years sentence which constitutes a *de facto* life without parole sentence.  [***See id****.] at [*4].  Thus, the Superior Court concluded that based on "the relevant case law, the trial court did not commit an error of law that requires [it] to vacate [Bourgeois's] sentences." ***Id****.*

      Next, the Superior Court discussed whether th[e trial c]ourt properly considered and applied ***Batts II*** and ***Miller****.*  In doing so, the Superior Court stated that th[e c]ourt "did not need to conduct an on-the-record examination of the ***Miller*** factors[,]" since the Commonwealth did not attempt to overcome the presumption against juvenile life without parole sentences in Bourgeois'[s] case. [***Id****.] at *7.  Additionally, it quoted th[e trial c]ourt's Rule 1925(b) opinion which incorporated the portion of the sentencing hearing that detailed the reasons for the sentence imposed. [***See id****.] at *8.  Thereafter, the Superior Court concluded that there was "no support for [Bourgeois's] assertion that the trial court failed to consider [Bourgeois's] mitigating factors or that it imposed an excessive sentence." ***Id****.* at *9.

      On May 22, 2022, the Supreme Court of Pennsylvania denied Bourgeois'[s] [p]etition for [a]llowance of [a]ppeal.  On May 23, 2023, Bourgeois filed the instant [PCRA petition raising] the following claims: (1) his consecutive sentences of 40 years to

life violate the Pennsylvania Constitution's prohibition against "cruel punishments," and (2) the sentences imposed by this Court amount to an unconstitutional *de facto* life sentence despite an implicit finding of transient immaturity.

PCRA Ct. Op., 12/29/23, at 1-13 (footnotes and some citations omitted).

Bourgeois raises the following issues for our review:

1. Did the PCRA [c]ourt err in interpreting the Pennsylvania Constitution's prohibition against "cruel punishment" co-extensively with the United States Constitution's prohibition against cruel and unusual punishment?

2. Is the imposition of an 80 years to life sentence on a transiently immature youth unconstitutional under the Eighth Amendment of the U.S. Constitution and Article 1, Section 13 of the Pennsylvania Constitution?

3. Is [] Bourgeois's *de facto* life sentence cruel under the Pennsylvania Constitution?

Bourgeois's Brief at 2 (issues re-ordered for ease of disposition).

Our standard of review for an order denying a PCRA petition is as follows:

[O]ur . . . review . . . is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a de novo standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Hernandez***, 328 A.3d 1159, 1165 (Pa. Super. 2024) (internal citation omitted).

A claim that the sentencing court imposed an unconstitutional and *de facto* life sentence in violation of ***Miller*** constitutes a challenge to the legality

of the sentence. ***See Commonwealth v. Harper***, 273 A.3d 1089, 1093 (Pa. Super. 2022).[2] As this Court has explained:

> A challenge to the legality of sentence is an attack upon the power of a court to impose a given sentence. Legality of sentence issues occur generally either (1) when a trial court's traditional authority to use discretion in the act of sentencing is somehow affected; and/or (2) when the sentence imposed is patently inconsistent with the sentencing parameters set forth by the General Assembly. The question of whether a claim implicates the legality of a sentence presents a pure question of law.

***Hernandez***, 328 A.3d at 1165.

Bourgeois argues in his first issue that Article I, § 13 of the Pennsylvania Constitution and the Eighth Amendment to the U.S. Constitution are not coextensive. Bourgeois applies the four-prong test derived from ***Commonwealth v. Edmunds***, 586 A.2d 887, 895 (Pa. 1991) in support of his argument that the Pennsylvania and federal constitutions should not be read coextensively. ***See*** Bourgeois's Brief at 14-28 (discussing the text and history of the Pennsylvania Constitution, related case law from other jurisdictions, and policy considerations).

Based on our review, we conclude Bourgeois's argument is unpersuasive. This Court has recently rejected the same argument in ***Hernandez***. As this Court explained:

> In ***Commonwealth v. Elia***, 83 A.3d 254, 267 (Pa. Super. 2013), this Court addressed an appellant's argument that Article

---

[2] When reviewing the legality of a sentence, our standard of review is *de novo,* and our scope of review is plenary. ***See Commonwealth v. Pope***, 216 A.3d 299, 303 (Pa. Super. 2019).

I, Section 13 of the Pennsylvania Constitution should be interpreted more broadly than the Eighth Amendment. In that case, the appellant provided a comprehensive analysis pursuant to **Edmunds**, and argued "adamantly that Article 1, Section 13 of the Pennsylvania Constitution provides broader protection against cruel punishments than the Eighth Amendment to the United States Constitution." **Elia**, 83 A.3d at 267.

In addressing this issue, the **Elia** Court stated:

> While we appreciate [the appellant's] zealous advocacy, we decline his invitation to construe our Constitution differently than the United States Supreme Court has interpreted the Eighth Amendment to the United States Constitution. Indeed, Pennsylvania courts have repeatedly and unanimously held that **"[t]he Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth and Fourteenth Amendments [to] the United States Constitution,"** and that **"the Pennsylvania Constitution affords no broader protection against excessive sentences than that provided by the Eighth Amendment to the United States Constitution."** [**Commonwealth v.**] **Barnett**, 50 A.3d [176, 197 (Pa. Super. 2012)] (quoting **Commonwealth v. Yasipour**, 957 A.2d 734, 743 (Pa. Super. 2008)). Because these constitutional provisions are coterminous, we need only review [the appellant's] claim under the Eighth Amendment. **Barnett**, 50 A.3d at 197 (citing **Commonwealth v. Parker**, 718 A.2d 1266, 1268 (Pa. Super. 1998) ("[Because] our analysis of this case under the United States Constitution is applicable to the state constitution, ... we need not engage in a separate state constitutional review.")).

**Id.** (emphasis added).

Further, in **Commonwealth v. Batts**, [] 66 A.3d 286 (2013) (**Batts I**), our Supreme Court addressed the Eighth Amendment protections and a sentence of life without parole for a juvenile convicted of first-degree murder, and our Supreme Court concluded that the mandatory sentence of life without parole was unconstitutional. [**See**] **Batts I**, 66 A.3d at 294. The **Batts I** Court rejected the argument that Article I, Section 13 of

- 9 -

the Pennsylvania Constitution required a complete ban on sentences of life without parole for juveniles. *See id*. at 299. The ***Batts I*** Court stated that "nothing in the arguments presented suggests that Pennsylvania's history favors a broader proportionality rule than what is required by the United States Supreme Court." *Id*. . . .

***Hernandez***, 328 A.3d at 1166-67. ***See also Commonwealth v. Torres***, 303 A.3d 1058, 1063 (Pa. Super. 2023) (noting that Article I, § 13 "provides no broader protections against cruel and unusual punishment than those extended under the Eighth Amendment to the United States Constitution") (internal citation and quotations omitted).

Thus, pursuant to ***Hernandez***, Bourgeois's argument that the Pennsylvania Constitution affords him greater protections than the U.S. constitution merits no relief. ***Accord Torres***, 303 A.3d at 1063; ***see also Commonwealth v. Crowley***, 605 A.2d 1256, 1257 (Pa. Super. 1992) (stating "precedent (*stare decisis*) requires [a three-judge panel of this Court] to adhere to a ruling of this Court until it is reversed either by our Supreme Court or an *en banc* panel of [the] Superior Court").

In his second issue, Bourgeois argues his aggregate sentence of eighty years to life is a *de facto* life sentence and is unconstitutional under the Eighth Amendment to the U.S. Constitution and Article 1, Section 13 of the Pennsylvania Constitution. ***See*** Bourgeois's Br. at 9-12. As noted above, the Pennsylvania Constitution offers no broader protections than the U.S. Constitution in this respect. Accordingly, we only address the Eighth

Amendment. This Court has recently addressed the issue of whether a *de facto* life sentence is unconstitutional under the Eighth Amendment:

[I]n . . . [**Batts II**], our Supreme Court held that "in the absence of the sentencing court reaching a conclusion, supported by competent evidence, that the defendant will forever be incorrigible, without any hope for rehabilitation, a life-without-parole sentence imposed on a juvenile is illegal[.]" 163 A.3d at 435 (citations omitted). In other words, before a sentencing court may sentence a juvenile to a term of life without parole, the sentencing court was required to find that the juvenile offender was incapable of rehabilitation. ***See id.***

However, the requirements from **Batts II** were abrogated by the United States Supreme Court in **Jones** . . . . In **Jones**, the United States Supreme Court held that the sentencing court is not required to make a separate factual finding of permanent incorrigibility before imposing a sentence of life without parole on a juvenile offender. 593 U.S. at 113[]. Following the United States Supreme Court's decision in **Jones**, the Pennsylvania Supreme Court decided [] **Felder**, [] 269 A.3d 1232 []. The **Felder** Court acknowledged that **Batts II** was abrogated by **Jones**. [**See**] **Felder**, 269 A.3d at 1235. The **Felder** Court stated that when sentencing juvenile homicide offenders, "sentencing courts are required to consider only the relevant sentencing statutes, which will guarantee that the sentencer considers the juvenile's youth and attendant characteristics as required by **Miller**." ***Id***. at 1246. "Moving forward, the authority of a sentencing court to impose a life-without-parole sentence on a juvenile homicide offender is circumscribed only to the extent set forth in 42 Pa.C.S.[A.] § 9721(b) and 18 Pa.C.S.[A.] § 1102.1, and by **Miller**'s command to 'consider the mitigating qualities of youth.'" ***Id***. at 1245 (quoting **Miller**, 567 U.S. at 476 []). [Further:]

It logically and necessarily follows that if a discretionary sentencing scheme is constitutionally sufficient to permit the imposition of a life-without-parole sentence on a juvenile homicide offender, so too can a court impose a sentence that is something less than life without parole. This includes a term-of-years sentence that may amount to a de facto life sentence. Stated differently, as long as the sentence was the product of a discretionary sentencing system that

- 11 -

included consideration of the juvenile's youth, the Eighth Amendment is satisfied.

*Id*. at 1245–46.  Pursuant to ***Jones***, the ***Batts II*** requirements that "a juvenile homicide offender cannot constitutionally receive a sentence of life without parole unless he or she is proven to be permanently incorrigible" was dissolved.  *Id*. at 1246.

***Hernandez***, 328 A.3d at 1167-68.

Bourgeois argues the trial court erred at sentencing and imposed a *de facto* life sentence in violation of the Eighth Amendment because it "made no findings that [] Bourgeois was one of the rare and uncommon juveniles who was irreparably corrupt, irretrievably depraved, or permanently incorrigible." Bourgeois's Brief at 9.  However, Bourgeois concedes that, pursuant to ***Felder***, the trial court was under no obligation to make such a finding.  ***See id***. at 10.  While Bourgeois notes the trial court considered his age and maturity at the time of the offenses and the positive personal changes he had made in prison since sentencing, he argues the court nevertheless "ignore[d] ***Miller***'s requirement that factors other than the crime be considered in sentencing." ***Id***. at 11.  Bourgeois also argues the court at sentencing did not consider "the research and character developments unique to juvenile offenders and imposed a disproportionate sentence." ***Id***. at 12.  ***See also id***. at 13.

The PCRA court explained its reasoning for denying relief:

Case law has established that "[s]o long as the sentence imposed is discretionary and takes into account the offender's youth, even if it amounts to a *de facto* life sentence, ***Miller*** is not violated." ***Felder,*** 269 A.3d at 1246.

At the time of Bourgeois'[s] resentencing hearing, this [c]ourt gave the following explanation prior to imposing sentence:

In determining the minimum sentence in this case, I must look to traditional sentencing considerations as outlined in the applicable statutes and the case law.

The sentence imposed here today must take into consideration the protection of the public, the gravity of the offense as it relates to the impact on the life of the victims and the community, and the rehabilitative needs of the defendant.

In this case, the [c]ourt must also be guided by Title 18, Section 1102.1(a), which provides for a minimum of at least [thirty-five] years to life where the offender was [fifteen] years of age or older at the time of the crime.

As indicated throughout the records, the defendant in this case was [seventeen] years and approximately five months of age on the date he committed these offenses. Just a few months short of [eighteen].

[N.T., 12/17/17,] at 151-52. Therefore, the record clearly reflects that this [c]ourt imposed a discretionary sentence after making the requisite statutory considerations and taking into account Bourgeois'[s] age at the time.

Based on the foregoing, this [c]ourt rejects Bourgeois'[s] claims that his consecutive sentences of [forty] years to life are unconstitutional under the Eighth Amendment to the United States Constitution and Article 1, § 13 of the Pennsylvania Constitution.

PCRA Ct. Op., 12/29/23, at 19-20.

Following our review, we conclude that Bourgeois's sentence did not violate the Eighth Amendment.[3] **See Hernandez**, 328 A.3d at 1168 (concluding that a juvenile defendant's sentence was constitutional where it was not a mandatory sentence and the trial court considered the relevant statutes, the facts of the case, the defendant's young age, the gravity of the offense, the need to protect the public, and the defendant's rehabilitative needs, and the trial court noted that it was not required to impose a sentence of life without parole and that it had the discretion to impose a lesser sentence in light of defendant's youthful age at the time of his crimes).[4]

---

[3] We observe this Court has previously determined that it must look to the **individual** sentences, not the aggregate, to determine whether a sentence is a *de facto* life-without-parole sentence, and concluded a forty-years-to-life sentence is not a *de facto* life sentence under **Miller** and **Montgomery**. **See Bourgeois**, 2019 WL 1579816 at *5-*6. Because the Federal and Pennsylvania constitutions are coextensive in this respect, Bourgeois's sentence is not a *de facto* life sentence for purposes of the Pennsylvania constitution either.

[4] We note that while we conclude that Bourgeois's sentence was constitutional, we do not reach the issue of whether the trial court abused its discretion in sentencing, as that issue is not implicated in Bourgeois's challenge to the legality of his sentence. We note that Bourgeois cites **Commonwealth v. Schroat**, 272 A.3d 523, 530 (Pa. Super. 2022) in support of his constitutional argument that the Court was required to adequately consider his maturity at the time of the offense and his subsequent conduct in prison as evidence of his rehabilitation, **see** Bourgeois's Brief at 11; however, in **Schroat**, this Court concluded, "the sentencing court's consideration of the factors of youth goes to its sentencing discretion and not to the legality of the sentence." **Schroat**, 272 A.3d at 526. Indeed, this Court's decision vacating and remanding for resentencing in **Schroat** hinged on the discretionary aspects, rather than the legality, of sentencing. **See id**. at 528-30. Lastly, challenges to the discretionary aspects of sentencing are not cognizable under the PCRA. **See Hernandez**, 328 A.3d at 1165 n.3.

In his third issue, Bourgeois argues his sentence is unconstitutional under Article I, § 13 of the Pennsylvania Constitution. However, as we have concluded in our review of his first issue, the Pennsylvania and federal constitutions are currently coextensive, and in our review of Bourgeois's second issue, we concluded his sentence does not violate the Eighth Amendment to the U.S. Constitution. Accordingly, Bourgeois's sentence does not violate Article I, § 13 of the Pennsylvania Constitution. Thus, Bourgeois's third issue likewise merits no relief. Accordingly, we affirm the judgment of sentence.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2025

- 15 -