J-S17038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| NICHOLAS LEE HUMMEL | : | |
| Appellant | : | No. 2767 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 14, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004049-2022

BEFORE: BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED JUNE 11, 2024**

Appellant, Nicholas Lee Hummel, appeals from the aggregate judgment of sentence of 18 to 40 years' incarceration, imposed after he entered an open guilty plea to various sexual offenses committed against his minor daughter. On appeal, Appellant solely challenges the discretionary aspects of his sentence. After careful review, we affirm.

The trial court summarized the facts and procedural history of Appellant's case, as follows:

> This case rises from a uniquely disturbing pattern of sexual abuse committed by Appellant against his biological daughter…. Appellant's abuse of [the victim] began when she was just nine years old while the two were living with [the victim's] uncle in Richland Township, Bucks County. N.T.[ Plea,] 3/1/2023, [at] 17. [The victim] had come under Appellant's care due to alleged physical and sexual abuse by her biological mother's boyfriend. *Id.* at [] 20. During the five years Appellant and [the victim] lived with her uncle, they slept in the living room in beds separated only by a hanging sheet. *Id.* at [] 18. It was here that Appellant would

abuse [the victim], either calling her over to his bed or going over to hers to engage in sexual activity. ***Id.***

Appellant's first instance of abuse occurred shortly after [the victim] turned nine. ***Id.*** at [] 17-18. During a thunderstorm, [the victim] became afraid and climbed into Appellant's bed for reassurance. ***Id.*** at [] 18. Shortly thereafter, Appellant began fondling [the victim's] genitals, inserting his fingers into her vagina, and masturbating himself in front of her. ***Id.*** at [] 17-18. This pattern of abuse was a regular occurrence until she turned twelve, when Appellant escalated his abuse to oral and vaginal rape. ***Id.***

Appellant would often initiate his abusive episodes by texting [the victim] demands that she "take care of him" through sex. ***Id.*** at [] 19. Investigators recovered instances of these messages,[1] including a message dated April 23, 2022, in which he texted [the victim] "[y]ou awake and want me to stuff that pussy tight till you cum while your [*sic*] tied to the bed unable to move while I explore every hole? Come here I'm horny!" Commonwealth's Guilty Plea Ex. C-1, at [] 1. ***See*[] *also*** [N.T. Plea] at [] 19. In another message dated May 3, 2022, Appellant offered to "get [his] hands on something" for [the victim] if she would have sex with him. [N.T. Plea] at [] 19. Investigators discovered that this message referred to marijuana, as Appellant had gotten [the victim] high at a marijuana festival the previous weekend. ***Id.***

[1] Appellant later admitted to investigators that he had deleted certain messages between himself and [the victim] N.T. [Plea] … [at] 21.

On May 3, 2022, [the victim], now thirteen years old, reported her abuse to a school counselor and a school resource officer. ***Id.*** at [] 17. [The victim] had first recounted her story to some friends at school who promised to come forward if she did not. ***Id.*** [The victim] was then … [interviewed] by police to investigate her allegations. ***Id.*** at [] 19-20. Pursuant to their investigation, officers wanted to hear Appellant's side of the story. To get him to the station for questioning, officers contacted Appellant and told him that they had picked [the victim] up as a runaway. ***Id.***

Ultimately, officers confronted Appellant about [the victim's] allegations. ***Id.*** at [] 20. He initially denied sexually abusing [the victim] but acknowledged she may have occasionally felt his "morning wood" given that he sleeps naked. ***Id.*** at [] 20-21. Appellant also admitted to getting high with [the victim] at the

marijuana festival. *Id.* at [] 20. However, he [told] investigators that[,] after they got home, it was [the victim] who initiated sex by climbing on top of him and putting his penis inside of her. *Id.* Appellant admitted he did nothing to stop her and could neither explain how the condom got on his penis[,] nor rule out that he put it there. *Id.* As to the messages, Appellant alleged that he was high at the time and did not know what he was doing. *Id.* He also alleged that some of the messages to [the victim] were intended for an adult female acquaintance, but he inadvertently sent them to his daughter. *Id.*

Unbeknownst to Appellant at the time of his statement, investigators had conducted a "text takeover" of [the victim's] phone by which they obtained access to [the victim's] text messages. *Id.* at [] 21. At some point during this period, [the victim] received a text from Appellant apologizing to her for his abuse and for "treating her like a sex doll" all this time. *Id.* at 21-22. Thereafter, investigators seized and forensically analyzed Appellant's laptop and phone, where they discovered numerous web searches for father-daughter incest pornography. *Id.* at [] 22.

On September 7, 2022, the Commonwealth filed an Information charging Appellant with one count each of Rape of a Child,[2] Involuntary Deviate Sexual Intercourse ("IDSI") with a Child,[3] IDSI with a Person Under the Age of 16,[4] Statutory Sexual Assault by a Person 11 Years Older than Complainant,[5] Aggravated Indecent Assault of a Child,[6] Aggravated Indecent Assault of [a] Complainant Under the Age of 16,[7] Incest,[8] Indecent Assault of a Person Under the Age of 13,[9] Corruption of Minors When Defendant is 18 or Above,[10] Indecent Assault of a Person Under the Age of 16.[11]

[2] 18 Pa.C.S. §[]3121(c).
[3] 18 Pa.C.S. §[]3123(b).
[4] 18 Pa.C.S. §[]3123(a)(7).
[5] 18 Pa.C.S. [§ ]3122.1(b).
[6] 18 Pa.C.S. §[]3125(b).
[7] 18 Pa.C.S. §[]3125(a)(8).
[8] 18 Pa.C.S. §[]4302(a).
[9] 18 Pa.C.S. §[]3126(a)(7).
[10] 18 Pa.C.S. §[]6301(a)(1)(ii).
[11] 18 Pa.C.S. §[]3126(a)(8).

On May 1, 2023, Appellant entered an open plea of guilty to the above charges. This [c]ourt ordered an assessment of Appellant's sexually violent [predator ("SVP")] status by the Pennsylvania Sexual Offenders Assessment Board [("SOAB")] the same day. On August 14, 2023, this [c]ourt determined, upon consideration of the uncontested psychological report compiled by Dr. Veronique Valliere, that [Appellant is] a[n SVP]. He was then sentenced on Count 1[, Rape of a Child,] to a period of no less than eighteen (18) years' to no more than forty (40) years' incarceration and lifetime sex offender registration with the Pennsylvania State Police. No further punishment was ordered on the remaining counts.

On August 24, 2023, Appellant filed two post-sentence motions seeking withdrawal of his guilty plea and reconsideration of his sentence. A hearing on both motions was held on September 25, 2023. This [c]ourt ultimately denied both requests.

Trial Court Opinion ("TCO"), 1/29/24, at 1-4.

Appellant filed a timely notice of appeal, and he complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on January 29, 2024. Herein, Appellant states the following issue for our review: "Did the trial court abuse its discretion in imposing a manifestly excessive sentence of [18] to [40] years of incarceration in a state correctional institution where it failed to consider Appellant's rehabilitative needs and other mitigating factors?" Appellant's Brief at 4 (emphasis omitted).

Appellant's issue implicates the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, ***see***

- 4 -

Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, … 909 A.2d 303 ([Pa.] 2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, … 831 A.2d 599 ([Pa.] 2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912–13.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant filed a timely notice of appeal, he preserved his sentencing challenge in a post-sentence motion, and he has included a Rule 2119(f) statement in his appellate brief. Therein, Appellant argues that the court imposed a sentence that "was manifestly excessive under the circumstances and exceeded what is necessary to protect the public and rehabilitate Appellant." Appellant's Brief at 10. He further contends that the court "failed to consider factors set forth in the Sentencing Code, including the rehabilitative needs of Appellant and other mitigating factors." *Id.* at 11

(citing 42 Pa.C.S. § 9721(b)).  We agree with Appellant that he has raised a substantial question for our review.  *See Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) (concluding that Swope's claim that his sentence was "unduly excessive, together with his claim that the court failed to consider his rehabilitative needs and mitigating factors upon fashioning its sentence, presents a substantial question").[1]

_____

[1] We note that Appellant also argues that the court failed to explain, on the record at sentencing or in its opinion, how Appellant's sentence is consistent with his rehabilitative needs.  *See id.* at 11 (claiming the court "entirely failed to address – either on the record at the time of sentencing or in its [o]pinion – how its sentence was consistent with the findings and recommendations of the evaluation [of Appellant's expert] or Appellant's rehabilitative needs generally"); *id.* at 13 ("The trial court failed to explain how its sentence of [18] to [40] years in a state correctional facility was consistent with Appellant's rehabilitative needs.").  He additionally contends that the court based his sentence solely on the seriousness of his crime and the impact on the victim.  *See id.* at 19.  We will not consider whether these arguments constitute substantial questions for our review, as Appellant waived them by not specifically asserting these claims in his post-sentence motion.  *See* Post-Sentence Motion, 8/28/23, at 1-2 (unnumbered); *see also Commonwealth v. Griffin*, 65 A.3d 932, 936 (Pa. Super. 2013) ("[I]ssues challenging the discretionary aspects of  a  sentence  must  be  raised  in  a  post-sentence motion or by presenting the claim to the trial court during the sentencing   proceedings.    Absent   such   efforts,   an   objection   to a discretionary aspect of a sentence is waived.") (citation omitted).

Alternatively, Appellant's claims that the court failed to sufficiently explain how his sentence is consistent with his rehabilitative needs, and that the court focused only on the severity of his crimes and the impact on the victim, are also waived due to Appellant's failure to specifically assert these issues in his Rule 1925(b) statement.  *See* Rule 1925(b) Statement, 12/28/23, at 1-2 (unnumbered); *see also* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived

*(Footnote Continued Next Page)*

In reviewing the merits of Appellant's sentencing challenge, we are mindful that,

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Moreover, "when imposing sentence, the trial court is granted broad discretion, as it is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." *Commonwealth v. Mulkin*, 228 A.3d 913, 917 (Pa. Super. 2020). This Court has also explained that,

> [w]hen imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a pre-sentence investigation report ("PSI"), it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

---

his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation[.] … [T]herefore, we look first to the language of that order.") (citations omitted); Trial Court Order, 10/25/23, at 1 (single page) ("Any issue not properly included in the statement timely filed and served pursuant to Rule 1925(b) shall be deemed waived.").

- 7 -

> Moreover, when imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.[] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on the victim and community, and rehabilitative needs of the defendant…. Furthermore, a trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence. The sentencing court, however, must also consider the sentencing guidelines.

*Commonwealth v. Clemat*, 218 A.3d 944, 960 (Pa. Super. 2019) (cleaned up).

In this case, Appellant claims that the court failed to properly consider his rehabilitative needs and the mitigating circumstances of his case. First, regarding his rehabilitative needs, Appellant contends that he presented ample evidence to demonstrate his amenability to rehabilitation. For instance, Appellant points to "the forensic psychology evaluation prepared by Dr. Kelly Chamberlain, Psy.D.," which "emphasized Appellant's extensive involvement in rehabilitative programming at the jail." Appellant's Brief at 17. He also stresses that he has participated in work opportunities and various classes while incarcerated, and has exhibited "excellent behavior…." *Id.* Appellant insists that, despite this evidence of his motivation and ability to be rehabilitated, the court seemingly found that "the rehabilitation of Appellant is impossible based solely on [his] pedophilia diagnosis." *Id.* at 19. According to Appellant, the "court's implicit presumption that Appellant would be unable to successfully engage in treatment was not consistent with the evidence presented at sentencing[,]" and demonstrated that "the trial court abused its discretion in sentencing Appellant to [18] to [40] years of incarceration

without considering [his] rehabilitative needs as required by the Sentencing Code." *Id.* at 20-21.

Second, Appellant contends that the court failed to take into account the mitigating circumstances of his case. Namely, Appellant stresses that his "childhood was not only highly dysfunctional[,] but also abusive[,]" as his father was incarcerated for a large part of his life and then involved Appellant, who was still a minor at the time, in illegal activity once he was released. *Id.* at 21. Appellant also presented evidence at the sentencing hearing that many of his family members abused drugs and alcohol, he had "little to no supervision" or support as a child, and he was physically abused and bullied by his older siblings and classmates at school. *Id.* at 21-22. Appellant points out that "Dr. Chamberlain opined [that his] history of family dysfunction and abuse have impacted his ability to identify healthy relationships as well as appropriate roles within those relationships." *Id.* at 22. Nevertheless, "Appellant repeatedly expressed genuine remorse for his conduct" in this case, "and accepted responsibility … by entering a guilty plea." *Id.* at 23. According to Appellant, the "trial court abused its discretion in failing to demonstrate meaningful consideration of these factors" and his significant childhood trauma in fashioning his sentence. *Id.* Thus, he asks us to vacate his sentence and remand for resentencing.

No relief is due. Initially, in the trial court's opinion, it explains its sentencing rationale, as follows:

Here, Appellant was sentenced to no less than eighteen (18) to no more than forty (40) years. His minimum sentence of eighteen (18) years was within the standard guideline range of six (6) to twenty (20) years. N.T. [Sentencing, 8/14/23, at] 5-6. Accordingly, the sentence is presumptively reasonable. ***Commonwealth v. Ventura***, 975 A.2d 1128, 1134-35 (Pa. Super. 2009).

However, given the singularly troubling circumstances of this case, a sentence on the higher end of the standard range [was] warranted…[.] At sentencing, the [c]ourt had the benefit of victim impact statements written by Appellant's mother, Appellant's brother, and [the victim] herself. Each established the devastating impact Appellant's conduct had on the lives of [the victim] and those around her. Specifically, they established that not only has [the victim] become plagued by persistent thoughts of suicide, self-harm, and self-loathing, she has also acted on these suicidal impulses on no less than three occasions. N.T. [Sentencing] … [at] 13, 18. So severe is [the victim's] self-destructive ideation that sharp objects and medications must be hidden from her to prevent further episodes. ***Id.*** at 14-15.

Further, the written statements report that Appellant's conduct has fundamentally impaired [the victim's] ability to form normal relationships with relatives, friends, or romantic partners due to her constant state of fear of re[-]victimization. ***Id.*** at [] 13, 18-19. This lifetime-worth of trauma weighed heavily in the [c]ourt's analysis. ***Id.*** at [] 31-32.

The [c]ourt also had the benefit of an expert psychological report from Dr. Veronique Valliere on behalf of the [SOAB]. Per the report, Dr. Valliere opined that Appellant met the diagnostic criteria for Pedophilic Disorder — a disorder that is life[-long], poses a significant risk of recidivism, and for which rehabilitation prospects are notoriously low. ***Id.*** at [] 34-35. ***See***[] ***also***[] Commonwealth's Sentencing Ex. C-1, at [] 5. It was on this basis that this [c]ourt concluded that Appellant [is] a[n SVP]. N.T. [Sentencing] … at [] 10-11.

Finally, and most importantly, the nature of the offense, the surrounding circumstances, and the reverberating impact on [the victim's] family and community factored greatly in Appellant's sentence. This [c]ourt considered the fact that Appellant preyed upon [the victim's] vulnerabilities after she had already been abused by her mother and stepfather. ***Id.*** 31-32. This [c]ourt

- 10 -

considered the fact that Appellant employed substances like marijuana to facilitate his crimes. *Id.* at [] 33. And this [c]ourt considered the damage and humiliation that Appellant's actions caused to his mother, his brother, and his community. *Id.* at 32-33.

*\*\*\**

Contrary, to Appellant's contentions otherwise, this [c]ourt also considered seriously the mitigating evidence adduced by defense counsel. For example, this [c]ourt read and contemplated the forensic psychological report submitted by the defense that documented Appellant's minimal criminal history, his chaotic childhood, and his commendable employment and volunteer history. *Id.* at [] 26-30, 31. This [c]ourt also considered Appellant's ultimate candor with police, and that Appellant's decision to plead [guilty] saved [the victim] the further agony of testifying at trial. *Id.* at [] 33.

On balance, however, the circumstances of this case demanded a sentence at the higher end of the standard range. … Appellant used his own daughter as a "sex toy," for his own sexual gratification, and without any regard for her interests or the trauma he was inflicting. *Id.* at [] 19. Rather than provide [the victim] a safe-haven from her mother's and stepfather's abuse, he exploited her insecurities and preyed upon her for his own gain.

This [c]ourt appreciates Appellant's own traumatic past, and that he chose the path of honesty when confronted by police. This cannot, however, excuse the harm Appellant inflicted upon his family, his community, and most of all, upon [the victim] herself. Furthermore, Appellant suffers from chronic pedophilia, a condition that is notoriously difficult to rehabilitate and is associated with increased risk of recidivism. Accordingly, in the interest of those Appellant has harmed, and for the safety of the community, this [c]ourt's sentence should be affirmed.

TCO at 9-11.

The record supports that the court considered and weighed the factors outlined in its opinion, including Appellant's rehabilitative needs and the mitigating circumstances of this case. *See* N.T. Sentencing at 30-35.

Ultimately, the court concluded that the seriousness of Appellant's crimes, the impact on the victim and the community, and the danger he posed to society warranted a sentence of 18 to 40 years' incarceration. This sentence was within the standard guideline range. We also stress that the court chose not to impose any further penalty for each of Appellant's remaining offenses. **See** N.T. Sentencing at 35 (the court's stating that, "[E]ssentially each count could lead to a consecutive sentence. I won't do that. I don't think that serves any purpose."). Given that Appellant repeatedly abused the victim over the course of several years, the court's decision to impose a term of incarceration in the standard range for only **one** of his crimes is certainly reasonable, if not exceptionally lenient.

Moreover, we agree with the Commonwealth that the two cases relied upon by Appellant are distinguishable from the facts at hand. As the Commonwealth aptly explains:

> [Appellant] points to **Commonwealth v. Ruffo**, 520 A.2d 43 (Pa. Super. 1987), and **Commonwealth v. Schroat**, 272 A.3d 523 … (Pa. Super. 2022). Neither case is factually on point. In … **Ruffo**, this Honorable Court reversed the judgement [*sic*] of sentence after finding that the reasons for the sentence, as indicated in the record, were based solely on the nature of the crime itself. That panel specifically found that the sentencing court there failed to consider any other factors specific to the appellant. **Ruffo**, [520 A.2d] at 189-90. Thus, the sentencing court there had directly disregarded the law which required it to consider all … the factors in 42 Pa.C.S. § 9721(b). Such is not the case in the matter presently before the Court[,] as the sentencing court here specifically considered all the relevant factors on the record developed before it.

\*\*\*

In *Schroat*, the appellant … had presented truly uncontradicted expert testimony to establish that[,] despite his tumultuous and unhealthy upbringing which led to the commission of his offenses, Schroat's time in the more stable environment of prison resulted in a finding that there was currently no evidence of emotional or psychological conditions and that Schroat demonstrated a low risk of violence.  [*Schroat*, 272 A.3d at 528-29].  Despite this, the sentencing court outright rejected the idea that the passage of time in an institutional and rehabilitative setting could address the psychological concerns which plagued Schroat in his youth.  There, the sentencing court stated:

> The internal demons that caused [Schroat] to stab and strangle Victim did not permanently disappear because of "maturity," brain development, and prison…[.]  Contrary to [Schroat's] expert, the court concludes that the type of sickness that drove [Schroat] to kill Victim did not just disappear with "maturity," or brain development, or prison.[]

*Id[.]* at []529 ([citations and brackets omitted]).

The clear error committed by the sentencing court in *Schroat* was using nothing but the nature of [the] crime itself to discredit any expert opinion.  Additionally, with no basis in science, fact, or law, the court there explicitly rejected the underlying premise that any amount of time or intervening treatment could have addressed the issues leading to Schroat's heinous crimes and used only the acts committed nearly thirty years prior to reaching this conclusion.  *Id[.]* at 530 ("[I]n the sentencing court's view, [Schroat] has made no progress because he committed murder in 1992.").

Here, however, the trial court had the benefit of, and relied upon, the SOAB report which [Appellant] stipulated to.  This report clearly supported the trial court's finding that [Appellant] was not likely to have successful rehabilitation as he suffer[s] from a lifetime condition which ha[s] no treatment.  Moreover, the trial court here carefully considered [Appellant's] past and upbringing. The trial court also credited [Appellant] with entering a guilty plea and not further traumatizing the victim through the trial and testimony process.  This was not the case in *Schroat* where the trial court truly only considered the crime itself.  The trial court here properly considered the nature of crime and its impact on the victim and the community in addition to all the relevant factors —

it merely found that some of these factors outweighed others. This was entirely proper.

Commonwealth's Brief at 17-19.

After reviewing **Ruffo** and **Schroat**, we agree that they are distinguishable for the reasons stated by the Commonwealth. We also agree with the Commonwealth that the trial court weighed all the relevant statutory factors, and Appellant is simply "displeased with the outcome of the weighing process…." **Id.** at 19. "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." **Commonwealth v. Macias**, 968 A.2d 773, 778 (Pa. Super. 2009) (citation omitted). Thus, Appellant is not entitled to sentencing relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/11/2024

- 14 -