J-S31010-24

2024 PA Super 289

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD E. RATLIFF | : | |
| | : | |
| Appellant | : | No. 910 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 14, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004411-2021

BEFORE:  BOWES, J., McLAUGHLIN, J., and BECK, J.

OPINION BY BOWES, J.:                    **FILED DECEMBER 05, 2024**

Edward E. Ratliff appeals from the aggregate judgment of sentence of seventeen and one-half to thirty-five years of imprisonment for multiple offenses related to a scheme orchestrated by Appellant, wherein Diarmani Deveaux purchased eight firearms for Appellant.  We affirm.

Commonly referred to as a "straw purchase," Deveaux, who could legally purchase firearms in Pennsylvania, purchased eight firearms on behalf of Appellant, an individual prohibited by law from possessing a firearm.  The trial court detailed the operation, as well as the investigation leading to Appellant's arrest, as follows:

> During the end of December, 2020, or first week of January, 2021, Appellant returned home from a vacation with his wife to find a young man, [Deveaux], living with his step daughter in the basement of Appellant's home on Hampton Road in New Brunswick, New Jersey.  In January of 2021, Deveaux was unemployed.  Prior to that time, Deveaux had been living out of his car because he could not afford to pay rent.  As Appellant discussed the matter of paying rent with Deveaux, he noticed that

Deveaux was wearing a gun holster and, upon questioning, learned that Deveaux was licensed in Pennsylvania to carry a firearm. In fact, Deveaux had purchased a 9[-]millimeter Glock Model 17 handgun in Chadds Ford, Pennsylvania, in July of 2020.

Appellant purportedly instructed Deveaux not to keep the firearm in the house because Appellant was concerned his grandchildren might find it. During this conversation concerning rent, Appellant also told Deveaux that he was interested in purchasing some firearms to protect his home because someone was trying to rob him. Deveaux agreed to facilitate Appellant's purchase of firearms to protect his home in exchange for paying rent and a place to live in the middle of the winter. However, a subsequent download of Deveaux's cell phone revealed a Google search on January 20, 2021, suggesting uneasiness by asking "Is it illegal to buy a gun for someone else?".

On January 22, 2021, Appellant, along with his wife, drove Deveaux to Treeline Sports in Norristown, Pennsylvania, in Appellant's black GMC Acadia SUV. After parking in the 7-Eleven parking lot, Appellant walked with Deveaux into Treeline Sports, with Appellant leading the way, at approximately 2:18 p.m.

After entering the store, Appellant pointed to the four firearms that he wanted in the display case, gave Deveaux cash, and Deveaux paid the store clerk for the firearms with the cash Appellant had given him. Deveaux also filled out paperwork required to purchase the firearms and indicated that he was the actual buyer. Specifically, Deveaux purchased the following handguns: Taurus Model G3, 9[-]millimeter; Glock Model 44, .22[-]caliber, and two Sarsilmaz CM, 9[-]millimeter, plus ammunition for $2,449.60 in cash. The store clerk packed up the handguns in four separate boxes, placed them into multiple bags and handed the bags to Appellant, who then carried them out of the store, followed by an empty-handed Deveaux, at approximately 2:53 p.m. Deveaux returned to the New Brunswick home with the Ratliffs, where he stored the four handguns in the basement until sometime in between February 6 and February 14, 2021.

On February 6, 2021, Appellant again drove Deveaux to Treeline Sports in Norristown from New Brunswick, New Jersey, arriving at approximately 3:19 p.m. This time they were accompanied by Appellant's stepson, Michael Jennings, who

Deveaux met for the first time that day. The three men entered the store, wherein Appellant is seen on surveillance video looking into the handgun display case, tapping the case. The store clerk handed Appellant a handgun and magazine, which Appellant then proceeded to hand to Deveaux. Appellant picked out a total of four handguns, and Deveaux paid the clerk with the cash given to him by Appellant. Deveaux again filled out the necessary paperwork indicating that he was the actual buyer. Specifically on February 6, 2021, Deveaux purchased the following handguns: Sarsilmaz Model SAR9BL, 9[-]millimeter; two Zigama Tisas Model PX9, 9[-]millimeter, and SCCY Model CPXl, 9[-]millimeter, plus ammunition for $2,175.00 in cash. The store clerk packed up the handguns in four separate boxes, placed them into two separate bags. Appellant carried out one of the bags, and Deveaux carried out the other bag.

Deveaux again returned to the New Brunswick home with Appellant. This time, however, Appellant convinced him that it would be better to store the eight handguns in the safe located in Appellant's bedroom because of the grandchildren living in the house. Deveaux agreed and helped Appellant transfer the eight handguns to the safe in Appellant's bedroom.

Sometime in between February 6 and February 14, 2021, Appellant proposed a third trip to purchase firearms, but Deveaux declined. At that point, Deveaux still believed Appellant wanted the handguns for the protection of his home and in Deveaux's mind, eight firearms were enough for that purpose. After returning to the house from checking on his car at the repair shop early on February 14, 2021, Deveaux found himself locked out, and another of Appellant's stepdaughters told him through a window that he was not allowed back in Appellant's home. As a result of Deveaux's refusal to purchase additional firearms, Appellant barred him from returning into the Ratliff home in New Brunswick, even to pick up his personal belongings. Later in the afternoon of February 14, 2021, Deveaux called the police to report that he was not allowed in the New Brunswick house to get his personal belongings, including the eight firearms, and Officer Alexander Uzunis was one of the New Brunswick Police Department officers who responded. When the officers discovered Deveaux had a handgun on his waist with a license to carry from Pennsylvania, they arrested him for gun possession without a license to carry that was valid in New Jersey.

Because he was refused access to the eight firearms and the paperwork that he had stored in Appellant's New Brunswick home, on or about February 15, 2021, Deveaux returned to Treeline Sports to get copies of the paperwork in an effort to assist the police in tracking the firearms. Kicked out of Appellant's house, Deveaux was now back to living in his car. In March of 2021, the Silver Spring Police Department outside of Mechanicsburg, Pennsylvania, called Deveaux and asked him to come in to discuss a possible motor vehicle accident. During the interview with Silver Spring Police . . . , Deveaux told [them] about the Treeline Sports firearms purchase and that Deveaux believed the eight firearms were still in Appellant's house in New Brunswick, New Jersey.

In February of 2021, Detective David Holtzman of the Montgomery County Detective Bureau Violent Crimes Unit began his assignment as the lead investigator into a multi-sale of firearms to Deveaux. [He was able to obtain from Treeline Sports surveillance] video from outside of the store from January 22, 2021, as well as outside and inside of the store from February 6, 2021.

Once Detective Holtzman viewed the video and identified Deveaux, he contacted law enforcement at the Collingdale Police Department in Delaware County in late February or early March based on the information Deveaux had provided on the paperwork to try to identify the other people in the video. A couple of days later, on or about March 5, 2021, Detective Holtzman received a call from Officer Bailey of the Silver Spring Police Department after Officer Bailey had contacted the Collingdale Police Department regarding Deveaux's possible car accident case near Mechanicsburg. Officer Bailey provided Appellant's name to Detective Holtzman from the statement he had taken from Deveaux. Detective Holtzman obtained a photograph of Appellant and confirmed his identity as a suspect in the straw purchase of eight firearms within [ten] days of one another. Detective Holtzman also learned that Deveaux had been arrested outside of the Ratliff home in New Brunswick, New Jersey, and now had an address and an incident report containing Deveaux's explanation.

On April 8, 2021, Detective Ryan Gartland of the Swatara Township Police Department in Harrisburg received a telephone call from Detective Holtzman asking for assistance with the execution of an arrest warrant for Deveaux, who they believed to be in the area. Detective Gartland and approximately six other

officers went out to the ping location provided by Detective Holtzman and located Deveaux living out of his car outside of a Planet Fitness. Deveaux cooperated and gave consent for the officers to search his vehicle. Detective Gartland recovered Deveaux's black iPhone and Deveaux provided him with the password, which the detective turned over to Detective Holtzman. The officers also recovered firearms transaction paperwork, the gun box for Deveaux's Glock handgun and 9[-]millimeter ammunition. Detective Holtzman drove to the Swatara Township Police Department to interview Deveaux on the same day.

Detective Holtzman recovered Deveaux's cell phone and received Deveaux's consent to download its contents. Evidence obtained from the download included web searches and text messages between Deveaux and Appellant.

On April 22, 2021, Trenton Police Department officers arrested Appellant outside of the high-rise apartment building on Greenwood Avenue in Trenton where Appellant was renting an apartment, and recovered two cell phones.

On July 1, 2021, Deveaux signed a proffer letter and agreed to cooperate with law enforcement. Deveaux pled guilty to numerous firearms offenses on Friday, August 19, 2022.

On August 5, 2021, Appellant signed a proffer letter and voluntarily gave a statement in the presence of his attorney to Detective Holtzman and [Assistant District Attorney ("ADA") Samantha] Arena that was audio and video recorded. In his statement, later played for the jury, Appellant admitted that he had driven Deveaux to the store to purchase firearms in Appellant's GMC Acadia, had given Deveaux the cash to purchase the handguns, and had helped Deveaux pick them out, but stated that the firearms were purchased for and at the direction of his stepson, Michael Jennings. Appellant also provided an address on East State Street in Trenton from which Mr. Jennings may have sold some of the handguns and where four of them might still be located. As Appellant gave his statement, Detective Holtzman showed Appellant various receipts, purchase paperwork, and photographs that Appellant acknowledged and signed. There was no other evidence uncovered, however, to substantiate Appellant's accusation that [Mr.] Jennings was involved in the straw purchases. Only one of the eight handguns has been recovered thus far. Detective Holtzman testified that the Glock

Model 44 was recovered in Trenton, New Jersey on September 11, 2021.

Trial Court Opinion, 9/28/23, at 3-12 (citations and parenthetical numbers omitted).

Based on the foregoing investigation, Appellant was charged with various firearms offenses. The Commonwealth filed notice of its intent to seek mandatory sentences upon conviction, and Appellant proceeded to a jury trial on August 25, 2022.[1] The Commonwealth presented testimony from Deveaux and multiple investigating officers from New Jersey and Pennsylvania to establish the foregoing. It also played the surveillance footage for the jury.[2] Finally, the Commonwealth presented an expert in the illegal transfer of firearms.

_____

[1] Eight counts of person not to possess a firearm were bifurcated to be judged by the trial court. The parties stipulated that Appellant was statutorily prohibited from possessing a firearm.

[2] At trial, the Commonwealth moved into evidence the surveillance footage from January 22 and February 6, 2021, as Exhibits 7 and 8, respectively. *See* N.T. Jury Trial Volume 1, 8/25/22, at 67-68. It compiled the relevant portions from those two days into a single video, Exhibit 9, which was admitted and published to the jury. *Id*. at 68-69. Appellant failed to ensure inclusion of these exhibits in the trial court record transmitted to this Court. Generally, "it is not incumbent upon this Court to expend time, effort and manpower scouting around judicial chambers or the various prothonotaries' offices of the courts of common pleas for the purpose of unearthing [documents] that never were formally introduced and made part of the certified record." *Parr v. Ford Motor Co.*, 109 A.3d 682, 695 n.10 (Pa.Super. 2014) (*en banc*) (cleaned up). Notwithstanding this general rule, we tasked our Prothonotary with seeking out the exhibits so that we could consider Appellant's claims within the context of the entire body of evidence presented to the jury. However, despite the diligent efforts of our prothonotary's office, the exhibits could not be located.

The expert explained several indicators of a straw purchase present in the instant case, including that two of the first four firearms purchased were identical, low-quality "street guns," which is atypical of what a gun collector would purchase, and he traveled from New Jersey to Pennsylvania to purchase them. *See* N.T. Jury Trial Volume 2, 8/26/22, at 254-55, 263. Notably, Deveaux historically purchased one firearm but then "all of a sudden he is buying four at one time and paying cash." *Id*. at 255. Then, while the investigation of the first multi-firearm purchase was underway, Deveaux purchased four more firearms with cash, again with two of those being the exact same firearm. *Id*. After watching the surveillance videos, considering the circumstances of the purchases, and Deveaux's internet searches, there was no doubt in the expert's opinion that the purchases were straw purchases by Deveaux for Appellant. *Id*. at 263, 269-70.

Appellant testified in his defense, claiming that Deveaux had paid him to drive to Treeline Sports for Deveaux to purchase firearms with his own money, and that Appellant had lied when he spoke to the police on August 5, 2021, because he was upset with his stepson for stealing rare coins from him.

The jury found Appellant guilty of eight counts each of materially false written statement and selling firearms to ineligible transferee,[3] and two counts

---

[3] One count from each batch was graded as a felony of the third degree, while the remaining seven counts from each grouping were graded as felonies of the second degree.

each of criminal conspiracy and dealing in proceeds of unlawful activities. The court convicted him of all eight counts of person not to possess a firearm.

Following the preparation of a pre-sentence investigation ("PSI") report, the trial court sentenced Appellant to an aggregate term of incarceration of seventeen and one-half to thirty-five years. This sentence was broken down thusly:

> The court imposed the mandatory minimum sentence of five to ten years [of] imprisonment on count [three], makes any materially false written statement; a consecutive sentence in the standard range of five to ten years on count [ten], criminal conspiracy; a consecutive mandatory minimum sentence of five to ten years on count [thirty-five], firearms: selling to ineligible transferee/person, and a consecutive sentence of two and one-half to five years on count [fifty-seven], dealing in proceeds of unlawful activities[.] The court directed a determination of guilt without further penalty on the remaining twenty-four convictions.

Trial Court Opinion, 9/28/23, at 2 (parenthetical numbers omitted). Appellant timely filed a post-sentence motion imploring the court to impose concurrent terms of incarceration.[4] After holding a hearing, the court denied the motion.

This timely appeal followed.[5] Appellant complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement, and the court submitted a Rule

---

[4] Prior to that, on November 21, 2022, the Commonwealth filed a motion to correct the sentencing sheet to reflect the structure outlined above and imposed in open court. Although the court did not rule on the motion, the docket reveals that a corrected sentencing sheet was filed of record the same day, rendering the motion moot.

[5] The path leading to the present posture of this case was a bit more complicated than set forth in the body of this opinion. A brief detour will suffice to give context. First, Appellant retained the services of Jonathan J.
*(Footnote Continued Next Page)*

1925(a) opinion in support of affirmance. Appellant has raised six issues for our consideration:

>  I. Did the jury err in determining Appellant was guilty of the crimes for which he was convicted when such verdict was against the weight of the evidence when no evidence was produced at trial that Appellant purchased, transferred, delivered or sold firearms or that Appellant conspired with Deveaux?
>
>  II. Did the trial court err in admitting Exhibit C-27, dated August 5, 2021, the proffer letter agreement of Appellant when said exhibit was irrelevant, inadmissible and not properly authenticated?
>
>  III. Did the trial court err in permitting [ADA Arena] to make statements and proffer evidence to the jury when those three pieces of evidence were not presented during the trial, thus prejudicing the jury, with those three pieces including: evidence on a screen about Appellant signing a receipt at the gun store that was never introduced at trial; references to Google searches done by Deveaux when no evidence was

---

Sobel, Esquire, for purposes of this appeal. While represented by Attorney Sobel, Appellant *pro se* filed a premature Post Conviction Relief Act petition alleging ineffective assistance of trial counsel. After complying with Pa.R.A.P. 1925(b), Attorney Sobel sought leave to withdraw as counsel in both this Court and the trial court because Appellant had not met his financial obligation and "wishe[d] to proceed in a direction that is repugnant to counsel's representation by asserting issues which are impractical and lacking merit." Application to Withdraw as Counsel, 10/16/23, at ¶¶ 9-10. The request was denied by both courts. Thereafter, Attorney Sobel filed a renewed application to withdraw, which we granted. The trial court then appointed instant counsel, Bonnie-Ann Brill Keagy, Esquire, who filed the brief under consideration and remains counsel of record. To cap off this foray, we note that Appellant has sent this Court multiple *pro se* letters, all of which have been directed to the attorney then representing him. *See Commonwealth v. Jette*, 23 A.3d 1032, 1044 (Pa. 2011) (reaffirming that, with exceptions not relevant here, "the proper response to any *pro se* pleading is to refer the pleading to counsel, and to take no further action on the *pro se* pleading unless counsel forwards a motion").

presented that Deveaux himself did those searches (only that they occurred on Deveaux's phone); and evidence of an unauthenticated text from Deveaux to Appellant that was referenced by [the Commonwealth] during [its] closing argument?

IV. Did the jury err in finding Appellant guilty beyond a reasonable doubt in light of the insufficient evidence presented that Appellant purchased and/or transferred any of the eight firearms at issue since there was no evidence presented that Appellant made any false written statement on either a federal or state form, that Appellant and . . . Deveaux agreed to the purchase and/or transfer of said firearms or that Deveaux sold and/or transferred said firearms to Appellant, or that Appellant conducted a financial transaction that was designed to conceal the true purchaser of the firearms?

V. Did the trial court impose an illegal sentence upon Appellant by imposing two consecutive sentences [*sic*] mandatory minimum sentences on the charges of "materially false written statement – purchase, transfer, delivery of a firearm" under 18 Pa.C.S. § 6111(g)(4)(ii) and upon "Penalties, Sales to Ineligible Transferees" under 18 Pa.C.S. § 6111(g)(2)?

VI. Did the trial court err in imposing a sentence that exceeded the sentencing guidelines when the court sentenced Appellant to an aggregate term of incarceration of [seventeen and one-half] to [thirty-five] years without articulating individualized reasons for imposing such a lengthy sentence?

Appellant's brief at 8-9 (capitalization and citations altered, parenthetical numbers omitted, issues reordered for ease of disposition).

At the outset, we note counsel's concession that Appellant's first three issues are either waived or frivolous. *Id*. at 32 (conceding that Appellant's weight claim is waived because it was not preserved in accordance with Pa.R.Crim.P. 607(A)); 50-52 (observing that trial counsel failed to preserve

an objection to the admission of Exhibit C-27 and that, in any event, any argument that it was irrelevant or inadmissible is frivolous);[6] 52 (explaining that the objected-to statements from the Commonwealth's closing argument concerned evidence that had been admitted at trial and that the Commonwealth properly argued the evidence in response to Appellant's closing).

When an attorney believes that a direct appeal lacks merit, they must submit a brief and request to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). Since Attorney Keagy maintains that some of Appellant's claims have merit, she was not bound by the usual *Anders* procedure. *See Commonwealth v. Morrison*, 173 A.3d 286, 291 (Pa.Super. 2017) (noting that "the *Anders* procedure applies only to appeals that are **wholly** frivolous—that is, cases where counsel has determined that there are no arguments that counsel may advance because **all** issues lack basis in law and/or fact" (emphases in original)). However, that did not authorize her to include claims she deemed unworthy of review in Appellant's brief. Indeed, as we have explained, including such claims contravenes an attorney's ethical duties:

> It is well settled that an indigent defendant does not have a constitutional right to compel appointed counsel to press

---

[6] Despite this assertion, we note that trial counsel's objection to the admission of Exhibit C-27 was preserved on the record. *See* N.T. Jury Trial Volume 2, 8/26/22, at 221.

nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points. The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. Indeed, an appellate lawyer's exercise of professional judgment in omitting weaker claims is obviously of benefit to the client: the more claims an appellate brief contains, the more difficult for an appellate judge to avoid suspecting that there is no merit to any of them. For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every colorable claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*.

*Id*. at 292 (cleaned up).

We acknowledge the tenuous position in which criminal defense attorneys may sometimes find themselves when confronted with a vociferous client who insists on pursuing frivolous claims in addition to potentially meritorious ones. In recognition thereof, this Court has outlined what should happen in the precise situation in which Attorney Keagy found herself:

[W]hen counsel and an appellant disagree on which issues should be raised and/or briefed on appeal, counsel must only raise and/or brief the issues that counsel believes, consistent with counsel's ethical duty, to be nonfrivolous. If the disagreement arises prior to counsel's filing of briefs, the appellant is free to petition for the withdrawal of counsel in order for the appellant to attempt to proceed *pro se* or with privately-retained counsel. If the disagreement arises after briefs have been filed by appointed counsel, and the appellant remains convinced of the merit of his or her proposed issues, the appellant may later challenge the effectiveness of his or her appellate counsel in a timely-filed collateral attack pursuant to the PCRA.

*Id*. at 293.

It is unclear when the disagreement between Appellant and Attorney Keagy arose. Regardless, Attorney Keagy should only have raised Appellant's

last three issues in Appellant's brief to this Court, based upon her own assertion that the first three issues were either waived or meritless. Since no advocacy has been put forth as to issues one, two, and three, we shall not address them.

We now turn to Appellant's sufficiency challenge, mindful of the following legal principles:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Sunealitis*, 153 A.3d 414, 419 (Pa.Super. 2016) (cleaned up). As with all questions of law, our standard of review is *de novo* and our scope of review is plenary. *Id*.

Appellant challenges his jury convictions for materially false written statement, selling firearms to ineligible transferee, criminal conspiracy, and dealing in proceeds of unlawful activities. *See* Appellant's brief at 23-24. He focuses on the lack of evidence that **he** purchased a firearm, made a false statement on a firearm form, transferred a firearm, or benefited from the sale of a firearm. *Id*. at 23-25.

We begin by setting forth the elements of the challenged crimes. The pertinent subsection of materially false written statement provides that "[a]ny

person, purchaser or transferee commits a felony of the third degree if, in connection with the purchase, delivery or transfer of a firearm under this chapter, he knowingly and intentionally . . . makes any materially false written statement, including a statement on any form promulgated by Federal or State agencies[.]" 18 Pa.C.S. § 6111(g)(4)(ii). The offense of selling firearms to an ineligible transferee criminalizes the conduct of "[a]ny person . . . who knowingly or intentionally sells, delivers or transfers a firearm under circumstances intended to provide a firearm to any person, purchaser or transferee who is unqualified or ineligible to control, possess or use a firearm under this chapter[.]" 18 Pa.C.S. § 6111(g)(2). Next:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he . . . agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime[.]

18 Pa.C.S. § 903(a)(1). Finally, as to dealings in proceeds of unlawful activities, the Crimes Code provides in relevant part:

> **(a)** **Offense defined.**--A person commits a felony of the first degree if the person conducts a financial transaction under any of the following circumstances:
>
> . . . .
>
> (2) With knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity and that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of unlawful activity.

- 14 -

18 Pa.C.S. § 5111(a)(2).

While most of Appellant's argument ignores the Commonwealth's accomplice liability theory at trial, he acknowledges that in order to be found guilty of these crimes, the jury had to "believe there was a conspiracy between Appellant and his co-defendant, Deveaux." Appellant's brief at 26. Notably, he does not explain how the Commonwealth failed to prove Appellant's accomplice liability or the conspiracy charges, instead stating baldly that "mere presence at a crime scene is not sufficient to prove a conspiracy existed." *Id*.

Accomplice liability has been explained as follows:

An actor and his accomplice share equal responsibility for the criminal act if the accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees or aids or attempts to aid such other person in either the planning or the commission of the offense. There is no minimum amount of assistance or contribution requirement, for it has long been established that intent of the parties is a consideration essential to establishing the crime of aiding and abetting a felony. Thus, even non-substantial assistance, if rendered with the intent of promoting or facilitating the crime, is sufficient to establish complicity. Absence or presence at the scene and the participant's role in the complicity are not dispositive of whether accomplice liability exists. Accomplice liability does not create a new or separate crime; it merely provides a basis of liability for a crime committed by another person.

*Commonwealth v. Gross*, 101 A.3d 28, 35 (Pa. 2014) (cleaned up).

Upon review, we determine that the evidence, when viewed in the light most favorable to the Commonwealth, clearly established that Appellant engaged in a conspiracy to conduct straw purchases with Deveaux and was

guilty of the substantive crimes as an accomplice. He did not need to personally lie on the form or conduct the hand-to-hand transactions to be found guilty of those crimes because he aided Deveaux and acted with the intent of facilitating the commission of those offenses. For example, Deveaux testified that Appellant concocted the idea to have Deveaux purchase firearms to protect Appellant's home in exchange for Deveaux having a place to live. Appellant twice drove Deveaux to Treeline Sports, selected the firearms to be purchased, provided Deveaux cash for the transactions, carried most of the firearms out of the store, and ultimately kept the firearms, as intended. Further, Appellant himself confirmed much of Deveaux's account in his statement to the police, though he contended that the firearms were for his stepson. Based on the foregoing, we reject Appellant's sufficiency challenges.

Appellant combines his last two issues into the same argument despite one assailing the legality of his sentence and the other its discretionary aspects.[7] *See* Appellant's brief at 34. We will consider them in turn, beginning with the illegal sentencing claim, which attacks the imposition of mandatory minimum sentences. It is well-settled that "a challenge to the application of a mandatory minimum sentence pertains to the legality of the sentence, which presents a pure question of law that we review *de novo*." **Commonwealth v. Dawson**, 132 A.3d 996, 1003 (Pa.Super. 2015) (cleaned up).

---

[7] We remind counsel that this practice is prohibited. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]").

Prior to trial, the Commonwealth filed notice of its intent to seek mandatory sentences for Appellant's violations of § 6111(g)(2) and (g)(4)(ii). Specifically, the first count in each batch was graded as a felony of the third degree, with the subsequent seven graded as felonies of the second degree with mandatory minimum sentences applying pursuant to § 6111(h)(1) and (2). The mandatory sentencing provisions provide as follows:

> (1) A second or subsequent violation of this section shall be a felony of the second degree. A person who at the time of sentencing has been convicted of another offense under this section shall be sentenced to a mandatory minimum sentence of imprisonment of five years. A second or subsequent offense shall also result in permanent revocation of any license to sell, import or manufacture a firearm.
>
> (2) Notice of the applicability of this subsection to the defendant and reasonable notice of the Commonwealth's intention to proceed under this section shall be provided prior to trial. The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine by a preponderance of the evidence if this section is applicable.

18 Pa.C.S. § 6111.

Appellant argues that the consecutive mandatory sentences involved crimes that were not truly "second or subsequent" because "Appellant had no time between his actions to change his behavior." Appellant's brief at 41. In his view, "Appellant's actions constituted a single criminal episode as the two incidents were closely related in time." *Id*. at 34. Thus, he insists that he should have been sentenced at all of those counts "as a first-time offender[.]" *Id*. at 41.

- 17 -

Our review of this claim is guided by our decision in **Dawson**. In that case, the defendant purchased a firearm on February 13, 2013, and another on February 27, 2013. Following a trial, she was convicted of two counts of sale or transfer of firearm for each firearm, pursuant to § 6111(c). The court imposed a mandatory minimum sentence for a subsequent conviction pursuant to § 6111(h)(1). Dawson appealed, arguing, *inter alia*, that the court erred in imposing a mandatory minimum sentence for a second count of § 6111(c) when the purportedly previous conviction resulted from the same trial. After considering the text of § 6111(h)(1), this Court rejected her argument, holding as follows:

> Section 6111(h) requires that the trial court determine whether a previous conviction exists at the time of sentencing, without giving consideration to when the conviction occurred. The statute does not contain any textual limitations as to when the first and second convictions arose. Furthermore, [§] 6111(h)(5) states that "a person shall be deemed to have been convicted of another offense under this section **whether or not judgment of sentence has been imposed for that violation.**" 18 Pa.C.S. § 6111(h)(5) (emphasis added). In our view, the language of this subsection provides greater clarity than [§] 9715's use of the phrase "at any time." 42 Pa.C.S. § 9715(a). Instantly, when the trial court sentenced Appellant on November 12, 2014, Appellant had been convicted of another [§] 6111(c) offense, but the judgment of sentence had not been imposed. This situation is contemplated by [§] 6111(h)(5)'s unambiguous text. Based on these considerations, we conclude the trial court correctly applied [§] 6111(h)(1) to Appellant and the resultant sentence was legal.

**Dawson**, 132 A.3d at 1004–05 (cleaned up).

We recognize that the situation in **Dawson** is not a perfect fit because that involved the sale of two firearms on separate days, whereas Appellant

- 18 -

was charged with firearms offenses for four purchased on one day and four purchased on another. However, this distinction is immaterial. Clearly, the existence of a conviction is what matters for purposes of § 6111(h)(1), not the timing of when the conduct charged occurred.

Insofar as Appellant is arguing that the convictions for the eight separate firearms should have merged, our jurisprudence dictates otherwise. In **Commonwealth v. Jones**, 2 A.3d 650 (Pa.Super. 2010), we considered whether a defendant could be convicted of a separate violation of § 6105 for each firearm possessed. Section 6105 makes it a crime for certain individuals to "possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a)(1). In concluding that a defendant could be sentenced for each firearm possessed, we noted that "[t]he Legislature's use of the indefinite article 'a' in the definition of the proscribed conduct makes it clear a person who is prohibited from possessing a firearm under [§] 6105 violates [§] 6105 for each firearm possessed." **Jones**, 2 A.3d at 654 (citations omitted). The relevant provisions of § 6111 likewise reference "a firearm." **See** 18 Pa.C.S. § 6111(g)(2), (g)(4)(ii). As merger does not apply and Appellant was properly convicted and sentenced for each subsequent firearm obtained through a straw purchase, he has not convinced us that his sentence was illegal.

Finally, we address Appellant's discretionary aspects of sentencing claim. An appellant seeking review of such a claim must invoke our jurisdiction by:

> (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a post-sentence motion; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b), or sentencing norms.

*Commonwealth v. Schroat*, 272 A.3d 523, 527 (Pa.Super. 2022) (cleaned up).

Appellant timely filed a notice of appeal and preserved a challenge to the discretionary aspects of his sentence in a timely post-sentence motion. Therefore, we must determine whether he raised a substantial question. To do so, a defendant must present "a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id*. (cleaned up). This Court "cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa.Super. 2012) (cleaned up).

Through his statement of questions and Rule 2119(f) statement, Appellant has raised a substantial question by alleging that the court exceeded

the sentencing guidelines without considering mitigating factors or articulating its reasoning. *See* Appellant's brief at 9, 21; ***Commonwealth v. Sexton***, 222 A.3d 405, 420 (Pa.Super. 2019) (finding defendant raised substantial question based upon claim that sentence exceeded the guidelines, trial court did not provide reasoning on the record, and the court failed to consider mitigating circumstances). Therefore, Appellant has invoked our jurisdiction to consider this issue.

In considering the merits, we will "not disturb a sentence absent a manifest abuse of discretion[,]" which will only be found where "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Schroat***, 272 A.3d at 527-28 (cleaned up). Notably, when "a sentencing court is informed by a PSI [report], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Miller***, 275 A.3d 530, 535 (Pa.Super. 2022) (cleaned up).

Prior to sentencing, the trial court considered Appellant's allocution, during which he asserted his innocence, but it deemed this testimony to be incredible. *See* N.T. Sentencing, 11/14/22, at 32-37, 47. Counsel advised the court of the support Appellant had at the hearing from friends and family and presented testimony regarding his character. *Id*. at 10-14. Additionally,

- 21 -

the court had the benefit of the PSI report and noted the corrections made by counsel. *Id*. at 4-6. From that report, the court observed that Appellant had a lengthy prior record. *Id*. at 44. After reviewing the statutory factors and sentencing guidelines, the court found that individual and general deterrence were its paramount concerns given the nature of the crime. *Id*. at 44-46.

In its Rule 1925(a) opinion, the court maintained that it "placed a good deal of emphasis on both the individual and general deterrence factors" because Appellant made two separate trips from New Jersey to Montgomery County to conduct straw purchases for eight firearms. *See* Trial Court Opinion, 9/28/23, at 32. Finally, the court explained that the aggregate sentence of seventeen and one-half to thirty-five years of incarceration, which was made up of two mandatory minimum sentences and one standard-range sentence, was "a small fraction of his exposure and far below the Commonwealth's requested sentence" of thirty to sixty years. *Id*. at 31-32.

Upon review of the certified record, it is apparent that the court placed ample support on the record for the sentence imposed, which was neither excessive nor outside the sentencing guidelines. Accordingly, we discern no abuse of discretion.

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge McLaughlin joins this Opinion.

Judge Beck files a Concurring Opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/5/2024